UNITED STATES of America,
Plaintiff-Appellee,

v.

John HITCHMON, a/k/a John Ashanti,
and Jessie Lee Fussell,
Defendants-Appellants.

No. 77–5587.

United States Court of Appeals,
Fifth Circuit.

Dec. 28, 1979.

Steven G. Glucksman, Miami, Fla. (Court-appointed), for Hitchmon.

Richard B. Marx, Miami, Fla. (Court-appointed), for Fussell.

James R. DiFonzo, T. George Gilinsky, Robert J. Erickson, Washington, D. C., for plaintiff-appellee.

Before TJOFLAT and HILL, Circuit Judges, and HIGGINBOTHAM,* District Judge.

TJOFLAT, Circuit Judge:

This direct criminal appeal is before this panel for a second time. Earlier, we held that the district court lacked jurisdiction to try the appellants because, at the time of trial, an appeal to this court was pending. *United States v. Hitchmon,* 587 F.2d 1357 (5th Cir. 1979). The en banc court, however, viewed the Government's appeal as having been taken from a non-appealable order and held that the district court had jurisdiction to proceed to trial. 602 F.2d 689 (5th Cir. 1979) (en banc). Now that it has been determined that the district court had the authority to try the appellants, we turn to a review of the merits of their convictions. Appellants contend, *inter alia,* that the convictions must be set aside because the district court's curtailment of their cross-examination of the Government's chief prosecution witnesses denied them a fair trial. We agree, and order a new trial.

In a trial that preceded the one here under review, the appellants, John Hitchmon and Jessie Lee Fussell, were convicted of assaulting federal officers in violation of 18 U.S.C. § 111 (1976). Their convictions were summarily affirmed by this court, 536 F.2d 1386 (5th Cir. 1976) (unpublished opinion, 5th Cir. R. 21). Thereafter, Hitchmon and Fussell moved the trial judge to grant

---

* District Judge of the Northern District of Texas, sitting by designation.

them a new trial on the basis of newly-discovered evidence. That evidence, they alleged, was that the Government's chief witnesses, two federal Drug Enforcement Administration (DEA) agents, had perjured themselves at trial. The agents had testified that Hitchmon and Fussell had assaulted them with firearms; this was denied by the defense.

Before the motion was heard, the DEA launched an internal investigation into the allegations of perjury. Appellants were given two polygraph tests, one administered by their own private expert and one by a DEA expert. The results of both tests indicated that appellants were truthful in denying the assaults. The agents refused to submit to polygraph examination. The DEA concluded that further investigation was not necessary and that a case of perjury had not been made. The trial judge was advised of the foregoing, and appellants' motion for new trial was granted. On retrial before a different judge, Hitchmon and Fussell again were convicted of the assault offense. This appeal followed.

Fussell was an employee of Pan Am at the Miami International Airport; Hitchmon was an acquaintance of Fussell. The DEA learned that a large shipment of marijuana had arrived at the airport and was being stored in Pan Am's cargo warehouse. A narcotics surveillance was ordered in an attempt to apprehend and arrest the owners, who were unknown to the DEA. During the early morning hours of April 25, 1975, DEA special agents Herbert Williams and John Andrejko were watching the warehouse from their car parked nearby. To avoid detection, they were lying on the car seats. According to the agents' testimony, three black males, appellants and a Vincent Hall,[1] drove up in a green Volkswagen and parked approximately ten feet away. Hitchmon and Hall, they said, got out of the Volkswagen and approached the agents' car, while Fussell remained behind. Hall,

their testimony continued, tapped on their car window with a shotgun and ordered them to get out at gunpoint; Hitchmon, meanwhile, stood in front of the DEA car with a .380 automatic pistol leveled at the agents. Fussell, still in the Volkswagen, also pointed a revolver at them, according to the agents.

Agent Andrejko then heard someone say " '[t]hat's not who we thought it is,' " and Hitchmon and Hall ran back to the Volkswagen and drove off. Record, vol. 6, at 278. The agents gave pursuit with drawn guns, identified themselves, and ordered the Volkswagen driver to stop. When the three occupants got out, the Volkswagen slowly rolled forward, revealing on the ground the weapons we have described. Hitchmon, Fussell and Hall were placed under arrest for assault on federal officers.

The appellants had a different account of the events. Fussell testified that they went to the airport to help one of Fussell's Pan Am coworkers fix his automobile. Fussell had been informed earlier that night that a cargo of marijuana was in the Pan Am warehouse, and the appellants and Hall went there hoping to discover who might claim it. Their plan was to follow the shipment and steal it the moment that it was left unguarded. Shortly after arriving at the surveillance point, Fussell made a nature call near the DEA car (the three had been drinking beer earlier in the evening). When Fussell got back into the Volkswagen, the DEA agents gave chase and made the arrests. The appellants vehemently denied ever brandishing or pointing any weapons at the agents, claiming that the agents' story was a pure fabrication.

Appellants contend that the DEA agents made up their story because they had blown their surveillance of the warehouse by pursuing and arresting the wrong suspects. They suggest that the agents' scenario was concocted after the prosecutor discovered that the evidence was insufficient to charge

---

1. Hall was indicted with appellants and was convicted in the first trial, but he became a fugitive and is not a party to these proceedings. Brief for Government at 2.

the appellants with conspiracy to import marijuana.

There is support in the record for appellants' claim. The charges against them were listed on both the United States Marshal and Dade County booking forms as conspiracy to import marijuana, but later they were changed to assaulting federal officers. Additional credence is given appellants' account by a peculiar discrepancy developed in the trial testimony of another Government witness, Customs Officer Edward Ostrowsky. Customs joined the DEA in conducting the surveillance at the Miami airport, and Ostrowsky had the assignment of coordinating the DEA and customs radio frequencies during the surveillance. He testified at trial that he heard a transmission from the DEA agents' car indicating that someone was tapping on the window with a shotgun. In his report made a short time after the appellants' arrests, however, he made no mention of any such transmission. It was not until the DEA investigation, nearly two years later, of appellants' allegations of perjury that Ostrowsky said anything about this radio transmission.

The trial judge permitted defense counsel to ask Ostrowsky, on cross-examination, why his initial report contained no account of the transmission and why the fact of the transmission did not surface until two years had passed. Counsel were not permitted, however, to develop the circumstances under which Ostrowsky first mentioned the radio transmission, *i. e.,* a DEA investigation into the possibility that the two agents, both of whom had worked cases with Ostrowsky, had given perjured testimony in an effort to obtain a conviction. While we recognize that a trial court exercises broad discretion in controlling the scope of cross-examination, *see, e. g., United States v. Davis,* 546 F.2d 583, 593 (5th Cir.), *cert.*

*denied,* 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977), we are convinced that it abused its discretion in this instance. The court stated that the defense was free to use any discrepancies in the witness's statements to test credibility, but prevented the defense from asking any question that might disclose that a DEA investigation had been conducted. Defense counsel's arguments that the circumstances of Ostrowsky's revelation of the radio transmission were vital to a proper assessment of Ostrowsky's and the DEA agents' bias and credibility were of no avail. Record, vol. 6, at 177–78. This foreclosed line of inquiry was all the more relevant in view of agent Ostrowsky's past working relationship with agents Williams and Andrejko, which would have allowed the jury inference that Ostrowsky had a motive to help them survive the DEA investigation intact.

It is manifest that the defense should have been allowed to probe Ostrowsky for his motive in telling the DEA investigators and the jury about a radio transmission that he omitted from his report of the airport surveillance. The trial court, following our precedent, *United States v. Masri,* 547 F.2d 932, 936 (5th Cir.), *cert. denied,* 431 U.S. 932, 98 S.Ct. 309, 53 L.Ed.2d 249 (1977), excluded from evidence the polygraph test results; appellants were unable, therefore, to bolster their version of the events with those results.[2] Consequently, the jury was left with weighing their credibility against that of the DEA agents, whose story was independently supported by Ostrowsky's testimony. The jury was entitled to a complete exploration of the context in which agent Ostrowsky made his several statements. The inquiry the defense sought to conduct was clearly within the scope of cross-examination permitted by Fed.R.Evid. 611(b).[3]

> Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

---

2. Because we reverse on the grounds stated, we need not decide whether evidence of polygraph tests could, in the proper case, be used to impeach a witness, although such would be excluded as substantive evidence.

3. Fed.R.Evid. 611(b) provides:

The defense also was prevented from questioning agents Williams and Andrejko about the DEA investigation. This, too, was an inappropriate restriction on the right of cross-examination, because the agents made statements during the investigation that, in view of what they said at trial, were matters to be considered by the jury in assessing their credibility. That the agents were subject to disciplinary action if they agreed with appellants' depiction of the facts is also something that the jury may have wanted to know in deliberating about the credibility issues. Since the cross-examination was short-circuited, however, the extent of permissible inquiry into the investigation is a matter that will have to await the new trial. The issue in the DEA investigation was the same issue that needs to be decided in this case: whether the Government witnesses or the appellants were telling the truth. Subject to the limitations of Fed.R.Evid. 403,[4] the jury was entitled to have the benefit of any evidence tending to show which account was more likely to be true. *See Davis v. Alaska,* 415 U.S. 308, 316–17, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974).

Because of our reversal on the grounds stated above, we need not reach the numerous other contentions raised by the appellants.

REVERSED AND REMANDED.

---

4. Fed.R.Evid. 403 provides:

   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.