**UNITED STATES of America, Appellee,**

v.

**Peggy COLLINS, Appellant.**

No. 80–1964.

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1981.

Decided June 23, 1981.

Rehearing and Rehearing En Banc
Denied Aug. 5, 1981.

David C. Godfrey, Clayton, Mo., for appellant.

Robert D. Kingsland, U. S. Atty., Charles A. Shaw, argued, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before BRIGHT and ROSS, Circuit Judges and HARRIS,* Senior District Judge.

OREN HARRIS, Senior District Judge.

Appellant, Peggy Collins, was convicted by a jury in the District Court of the Eastern District of Missouri,[1] on one count of possession of a controlled substance with intent to distribute and one count of conspiracy to possess a controlled substance with intent to distribute. This appeal challenges the two convictions.

An investigation by Drug Enforcement Administration (DEA) agents into the drug dealings of Thomas V. Schleuter resulted in the arrest of Schleuter and appellant. According to a confidential informant, Schleuter had said he could obtain 20,000 quaalude tablets from a pharmaceutical company. Subsequently, Officer Bill Carter, working in an undercover capacity, contacted Schleuter, and on February 21, 1980, purchased 100 methaqualone or "quaalude" tablets at Schleuter's apartment.

After this initial contact, Carter and Schleuter conversed several times to arrange future purchases. On April 2, 1980, Schleuter gave Carter a number where he could be reached that night. This number was listed to the appellant, Collins. Appellant and Schleuter were close friends and he had a key to her apartment.

A second transaction between Carter and Schleuter occurred on April 8, 1980. This sale, of some 500 tablets, was again made at Schleuter's apartment.

In order to discover Schleuter's source, DEA agents decided to purchase 10,000 methaqualone tablets. On July 7, 1980, Schleuter informed Carter the next sale would be at Collins' apartment and that he had a key. On July 9, 1980, the deal was confirmed for the following night. Later that same evening, Carter and two other officers began a surveillance of the apartment. Schleuter was observed arriving, going into the apartment and coming out with the appellant. Schleuter then left and went to his apartment.

At 8:30 p.m. the following night, Carter drove to Schleuter's apartment. He and another officer gave $28,500.00 to Schleuter, then followed him to appellant's apartment. When they arrived, Collins was seen standing at the upstairs window. She remained upstairs. Carter went to the apartment with Schleuter, who opened the door and entered. Schleuter went directly to a coffee table, opened a sliding door, and pulled out a white trash bag. Inside was a brown bag containing a large number of tablets.

As soon as he saw the tablets, Carter signalled the other officers, identified himself to Schleuter, and arrested him. Appellant was arrested upstairs and informed of her rights. Schleuter was then taken upstairs and appellant brought downstairs and seated on the couch behind the coffee table. Schleuter and appellant were questioned separately. While upstairs, Schleuter told the officers Collins was his source or supplier.

Collins and Schleuter were transported to DEA headquarters, where they were placed in the same hold-over cell. Schleuter testified Collins asked him what he had said. Schleuter told her "the truth" and she responded, "Well, either I'm going to have to pay for these quaaludes or I'm dead." Early on July 11, 1980, Schleuter gave a handwritten statement naming the appellant as his source for the methaqualone.

Appellant was indicted on July 28, 1980. On the indictment, there was a notation which recited the amount of bond and that each statutory charge carried a penalty of a maximum fine of $25,000.00 and a prison term of up to 15 years. Count I also contained a mandatory special parole term of three years to life.

Schleuter, pursuant to a plea bargain agreement, plead guilty to Count I three

---

* Oren Harris, Senior District Judge, Eastern and Western Districts of Arkansas, sitting by designation.

1. The Honorable H. Kenneth Wangelin presiding.

days before the scheduled trial and testified against the appellant. The government's motion to dismiss the other three counts of the indictment against him was pending during the appellant's trial.

Appellant argues numerous points for reversal.

## I.

■ Appellant first argues that she was not properly informed of the charges against her and, hence, could not prepare an adequate defense or make appropriate decisions. The notation on her copy of the indictment concerning the range of punishment was that for a narcotic drug. Appellant's charges involved methaqualone, a non-narcotic controlled substance. Since the range of punishment for a non-narcotic is different, the information noted on the indictment was erroneous.

The purpose of an indictment is to inform the accused of the nature of the charges. It should be specific enough to avoid the danger of his again being prosecuted for the same offense. *Hayes v. U. S.*, 296 F.2d 657 (8th Cir. 1961). The statutory citations on the indictment were correct. The appellant was apprised of the transaction and the charges against her. Appellant has pointed to no specific prejudice, but rather speculates on actions which she might have taken had the correct information been given. We fail to see that Collins was prejudiced by this information.

The appellant also contends the erroneous punishment information was put before the jury by the Court. The record reflects the trial judge informed the jury of the possible penalty (the erroneous one noted on the indictment), but only after the appellant's counsel had raised the issue in his cross-examination of Schleuter. Defense counsel asked Schleuter if he could have received up to 15 years on each count which had been dismissed after he entered into the plea bargain agreement. The Court then told the jury the charges had not been dismissed and that it was up to the Court to determine if the remaining charges would be dismissed. He also informed them of the possible punishment.

■ It is true the jury has no concern with the consequences of a verdict. *Government of Virgin Islands v. Fredericks*, 578 F.2d 927, 935 (3d Cir. 1978); *Chapman v. U. S.*, 443 F.2d 917, 920 (10th Cir. 1971); *Lyles v. U. S.*, 254 F.2d 725, 728 (D.C.Cir. 1958), cert. denied 362 U.S. 943, 80 S.Ct. 809, 4 L.Ed.2d 771. The comment by the Court, however, was made to clear up any misunderstanding created by defense counsel. The information was before the jury due to the actions of the defendant. Furthermore, the Court informed the jury that sentencing in federal court was strictly up to the Court. We find no error requiring reversal.

## II.

The second assertion by appellant is that even though a timely motion for discovery was filed, she was not given the handwritten statement of Schleuter, her alleged co-conspirator, prior to trial. She contends this statement was material to her defense. The statement was provided after the direct testimony of Schleuter.

■ Rule 16 of the Federal Rules of Criminal Procedure does not authorize the discovery or inspection of statements made by government witnesses. Furthermore, 18 U.S.C. § 3500, known as the *Jencks Act*, further excepts this material from discovery. Schleuter was a government witness and his statement was not subject to discovery. There was no error in Collins not being provided with his statement prior to trial.

## III.

Appellant next argues the trial court abused its discretion in limiting defense counsel's cross-examination of Detective Carter regarding the entrance into her apartment. Schleuter testified he had returned the apartment key to Collins the night before their arrest. Defense counsel asked Detective Carter several questions about the entry into the apartment.

■ The trial court has wide discretion in the scope of cross-examination and, absent an abuse of this discretion, will not be reversed. *U. S. v. Hitchmon*, 609 F.2d 1098 (5th Cir. 1979); *U. S. v. Davis*, 546 F.2d 583, 593 (5th Cir. 1977), cert. denied 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391; *U. S. v. Dickens*, 417 F.2d 958 (8th Cir. 1969). The record reveals defense counsel thoroughly questioned and explored the subject with Detective Carter before being told to move to another subject. The questions were virtually identical, as were the answers given by Detective Carter. We cannot say the trial court abused its discretion in terminating the questions about the key.

### IV.

The next assertion of appellant regards the admission into evidence of the methaqualone and Collins post-arrest statement. Appellant filed timely motions to suppress both of these. These motions were referred to the United States Magistrate pursuant to 28 U.S.C. § 636(b), were heard, and denied.

The drugs in appellant's apartment were seized while Detective Carter was on the premises. Appellant contends that because the government did not have a search warrant, the entry into the apartment made without her permission or the permission of another occupant, was an unreasonable intrusion. Appellant had requested and received her key from Schleuter the night before the arrest, after he had informed her he was in love with another woman. There is a dispute as to how entrance was gained to the apartment. Carter says Schleuter had keys in his hand but he did not actually see Schleuter use them. The government contends Schleuter had free access to the apartment and was in a position to consent to the entrance.

■ Appellant relies upon *Payton v. N. Y.*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which holds, " . . . the fourth amendment to the United States Constitution . . . prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." This case struck down a New York statute which allowed police officers to enter a home without consent to make a felony arrest. The officer here, however, entered to purchase drugs at the invitation of a co-defendant. Officer Carter entered the apartment at the invitation of Schleuter. Schleuter and the appellant had been seen entering the apartment together the night before. Schleuter had done business over the phone at the apartment. After counting the money, and prior to leaving for appellant's apartment, Schleuter had excused himself "to call Peggy." Furthermore, Collins observed the entry into her apartment without questioning or confronting them. The evidence supports the finding of the Magistrate that Schleuter and Officer Carter had the consent of Collins to enter and use the apartment. No protest was made by Collins when Schleuter entered. No warrant was needed to enter the apartment. *Lewis v. U. S.*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966).

■ As for the drugs, they were in plain view when seized, within Schleuter's immediate control, and the seizure was incident to a lawful arrest. Therefore, no warrant was required. *Coolidge v. New Hampshire*, 403 U.S. 443, 464–473, 91 S.Ct. 2022, 2037–2042, 29 L.Ed.2d 564 (1971); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). We do not find this case to be controlled by *Payton*, supra. The seizure and arrest were made during an undercover drug deal. This would hardly be called a routine felony arrest. Finding the drugs to have been in plain view and within the immediate control of Schleuter, we do not think this was an illegal seizure. The drugs were seized incident to a lawful arrest. We find no error in the refusal to suppress the drugs.

After her arrest upstairs, appellant was brought downstairs and seated on the couch behind the coffee table. The bag with the tablets was on top of the table. Appellant was transported to DEA headquarters by two officers. The officers testified that during the trip "she asked why was she being arrested, just because there were

5000 quaaludes found in her living room?" One of the detectives asked: "Why did you say 5000?" Appellant refused to say anything further.

At DEA headquarters, the tablets were counted. There were 5000 tablets instead of the 10,000 Carter had expected to purchase. A piece of masking tape with "5000" written on it was on the brown bag.

Appellant was advised of her *Miranda* rights at the apartment. She contends her rights were violated, however, because she was not immediately taken to a Magistrate but to DEA headquarters and that the officers interrogated her on the way to the DEA office. She contends her "statement" was not made voluntarily.

■ Rule 5(a) of the Federal Rules of Criminal Procedure requires an arresting officer to take an arrested person before a Magistrate "without undue delay." Failure to do so may contribute to a determination that a statement made during a period of unnecessary delay is inadmissible. *Mallory v. U. S.*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). The United States Magistrate found the only statement made by appellant came within "20 minutes after her arrest, not during a period of unnecessary delay." We agree. Appellant asked the question and otherwise exercised her right to remain silent.

In connection with the admission of this statement, appellant requested the jury be instructed on what determines whether a statement is made "knowingly." The Court refused to give this instruction, noting the Magistrate had already determined the statement was made voluntarily. As we agree the statement was voluntary, we, therefore, affirm the trial court's refusal to give the requested instruction.

## V.

*Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), is relied upon by the appellant in her next contention. Appellant states she was denied a fair trial because the police officers were allowed to comment on her post-arrest silence. This arises from the recitation of the statement made by the appellant in the car concerning the 5000 quaaludes. The officers testified, when asked what she meant, "She refused to make any other statement." The Assistant United States Attorney also remarked on this silence in his opening statement. According to appellant, this was a comment by the prosecution on her exercise of her *Miranda* rights.

In *Doyle*, supra, the Supreme Court held it was a violation of due process for a prosecutor to seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving his *Miranda* warnings. Appellant contends she asked the question because she had seen the piece of tape with "5000" written on it and had heard the officers talking about quaaludes, and was merely trying to ascertain why she was arrested.

■ The question is whether this was a comment on appellant's silence used for impeachment purposes, or was the mere recitation of her lack of response. The occurrence was post-arrest. Appellant had been given her *Miranda* warnings. She voluntarily spoke. The recitation by the officers that she refused to say anything further was part of the *res gestae*; silence was a part of the conversation initiated by the appellant. We do not believe the recitation that appellant said nothing further was a comment on her silence, but rather a description of the events.

## VI.

Appellant argues the trial court committed error when it allowed hearsay testimony to be stated by witnesses during the first days of trial. These witnesses were police officers who testified as to what Schleuter had told them. According to Collins, this testimony was allowed by the trial court even though there had been no determination a conspiracy existed.

The record reveals Judge Wangelin allowed the testimony but did not formally admit it into evidence until the close of the

trial. At that time, he stated the government had proved the existence of a conspiracy by a preponderance of the evidence and that all the evidence would be received.

The applicable law is found in *U. S. v. Bell*, 573 F.2d 1040, 1043 (8th Cir. 1978).

It is well-established that an out-of-court declaration of a co-conspirator is admissible against a defendant if the government demonstrated 1) that a conspiracy existed, 2) that the defendant and the declarant were members of the conspiracy and 3) that the declaration was made during the course and in furtherance of the conspiracy.

In *Bell*, we held an out-of-court statement is not hearsay and is admissible if on the independent evidence a district court is satisfied that it is more likely than not that the statement was made during the course and in the furtherance of an illegal association in which the declarant and the defendant were parties. "The ordinary civil standard of the preponderance of the evidence is sufficient since the District Court is ruling on admissibility rather than ultimate guilt." *Bell*, supra, at 1044.

■ There is independent evidence in this case to support the decision of the district court to admit the testimony. The question asked of the officers by Ms. Collins concerning the reason for her arrest is such independent evidence. Only 5000 quaaludes were confiscated; 10,000 tablets were expected to be purchased. At the time of her question, everyone believed the bag to contain 10,000 tablets. This is independent evidence sufficient to prove the conspiracy.

We find no error in the trial court's decision to admit the out-of-court statements.

## VII.

The admission into evidence of the statement allegedly made to Schleuter while in the cellblock is the next point considered to be error. The statement, "Well, either I'm going to have to pay for those pills or I'm dead.", constitutes an admission by a party-opponent and is admissible under Rule 801(d)(2), Federal Rules of Evidence.

Appellant argues this statement should not have been admitted because of the manner in which it was obtained. Collins contends Schleuter was placed in a cellblock with her in a deliberate attempt to elicit information from her. This occurred after she indicated she wished to remain silent. She relies upon *U. S. v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), in which a defendant was placed in a cell with a paid government informant. In *Henry*, the Supreme Court ruled the subsequent testimony by the informant should have been suppressed as the government had surreptitiously elicited information from a defendant after he had elected to invoke his fifth amendment rights.

■ The testimony of Schleuter was that appellant began the conversation by asking him what he had told the authorities. Her response to his statement, "the truth", was the above quote. In *U. S. v. Lambros*, 564 F.2d 26 (8th Cir. 1977), we held that informal information which is volunteered to a cellmate is admissible. Collins began the conversation with Schleuter. We find this to be voluntary information of an informal nature along the line of that in *Lambros*, and do not find any error in its being admitted as an admission against interest.

## VIII.

Appellant contends the trial court erred in not giving instructions on lesser included offenses. For Count I, appellant offered an instruction on possession of a controlled substance. For Court II, she offered an instruction on conspiracy to possess a controlled substance.

*U. S. v. Thompson*, 492 F.2d 359, 362 (8th Cir. 1974), sets out when a requested lesser offense instruction should be given:

A defendant is entitled to an instruction on a lesser included offense if: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of the lesser offense; (4) the proof on the element or elements

differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense. . . .

Appellant cites *U. S. v. Brischetto*, 538 F.2d 208 (8th Cir. 1976), and states the jury could have inferred she merely possessed the drugs. The quantity seized does not necessarily indicate she had the intent to distribute.

In *Brischetto*, supra, however, the issue of intent to distribute was placed in dispute by conflicting as well as contradictory testimony. "A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." *Sansone v. U. S.*, 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965).

■ The appellant presented no evidence at the trial. The claim throughout the trial was complete innocence. The jury either believed she had nothing to do with the transaction or was guilty as charged. There was not a rational basis for instructing the jury on lesser included offenses and hence we find no error in the trial court's refusal to give the requested instructions. *U. S. v. King*, 567 F.2d 785 (8th Cir. 1977).

### IX.

Appellant contends the court erred in giving an "aiding and abetting" instruction. A conspiracy requires a "meeting of the minds", while only participation is necessary for accomplice liability. In Count I, however, the appellant was not charged with conspiracy but possession with intent to distribute. She was charged under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2(a) which classified her as an aider and abettor punishable as a principal.

Collins argues the "aiding and abetting" instruction permitted the jury to infer that they could find her guilty of both Count I and Count II if they believed she "aided and abetted" Schleuter. She further asserts the Court did not adequately instruct the jury as to the weight to be accorded the testimony of an accomplice.

A review of the instructions reveals the court instructed the jury on conspiracy, statements made in furtherance of a conspiracy, and accomplice liability. The jury was instructed the testimony of an accomplice should be viewed with caution. The court clearly and succinctly defined a conspiracy and charged the jury as to the elements. An instruction was also given as to the consideration of personal advantage in testimony. Furthermore, the jury was instructed:

A separate offense is charged in each count of the indictment. Each charge and the evidence pertaining to it should be considered separately. The fact that you may find the accused guilty or not guilty as to the other offenses charged should not control your verdict as to any other offense charged.

We believe the trial court adequately and correctly instructed the jury as to the applicable law for the charges against appellant.

### X.

The verdict forms given to the jury contained blanks in which the jury was instructed to write in its verdicts. The trial court told the jury:

In the blanks, you will write the words, "Guilty" or "innocent", as the case may be, in both blanks.

Collins contends this implied to the jury there was no longer a presumption of innocence.

■ The Court instructed the jury it was "in no way suggesting what your verdict or verdicts should be." We do not believe the verdict form in any way suggested the presumption of innocence was gone. We do not find the instruction regarding the verdict forms to be erroneous or require reversal.

### XI.

The appellant's last point is that the case should be reversed because of cumulative error. We do not find error in the case or merit in this argument.

Finding no error which requires reversal, we affirm the convictions of the appellant.