UNITED STATES of America, Plaintiff,

v.

Yehuda DRAIMAN, Defendant.

No. 84 CR 950.

United States District Court,
N.D. Illinois, E.D.

July 22, 1985.

Anton R. Valukas, U.S. Atty. by William A. Spence, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Patrick A. Tuite, David S. Mejia, The Law Offices of Patrick A. Tuite, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

Before the Court is defendant's motion for bond pending appeal of defendant's conviction. Defendant was convicted of ten counts of mail fraud and subsequently sentenced to four years imprisonment and five years consecutive probation. For the reasons stated below, defendant's motion is denied.

 Under 18 U.S.C. § 3143(b), the defendant bears the burden of proving four conditions before a court may grant bail pending appeal:

(1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;

(2) that the appeal is not for purpose of delay;

(3) that the appeal raises a substantial question of law or fact; and

(4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

*United States v. Hall,* 603 F.Supp. 333, 335 (N.D.Ill.1985) (*quoting U.S. v. Miller,* 753 F.2d 19, 24 (3d Cir.1985). In this circuit, a "substantial question of law or fact" is defined as "a 'close' question or one that very well could be decided the other way." *United States v. Molt,* 758 F.2d 1198, 1200 (7th Cir.1985). Without passing on elements one and two, defendant has failed to establish that "the appeal raises a substantial question of law or fact" which, if determined favorably to defendant on appeal, would be likely to result in a reversal or new trial as required by the third and fourth elements. Having reviewed the alleged trial errors in defendant's motions for acquittal and for bond, the Court finds that defendant has failed to raise any "close question" which would be likely to result in a reversal of the conviction or a

new trial of all counts on which imprisonment has been imposed.

In his post-trial motion for judgment of acquittal or new trial, defendant raised 17 alleged errors at trial which the Court denied on May 21, 1985. In his memoranda in support of the motion for bond pending appeal, defendant argues that four principal issues are "substantial questions" justifying bond under § 3143(b). First, defendant argues that the Court committed reversible error by excluding evidence of the nature and details of the complaint which defendant filed against the Chicago police officers who were government witnesses at trial. Second, defendant argues that there was insufficient evidence regarding mailings charged in certain counts of the indictment. Third, defendant argues it was error for the Court to introduce Government Exhibit 47, a worksheet of an accountant. Finally, defendant argues that the Court committed reversible error when it allowed the government to introduce evidence of other offenses committed by the defendant for the purpose of rehabilitating Sol Messinger, a government witness at trial.

## A. *Facts*

Defendant Yehuda Draiman was charged, in a 13-count indictment, with ten counts of mail fraud, two counts of obstruction of justice, and one count of perjury. The jury returned verdicts of guilty on the mail fraud counts and not guilty on the perjury count. The jury was unable to reach an unanimous verdict on the obstruction counts, and the Court dismissed those counts on the government's motion.

The mail fraud counts charged that the defendant entered into a scheme to defraud two insurance companies by submitting false claims relating to a burglary at the defendant's business. The evidence at trial established that several video tapes valued at approximately $25,000 were stolen from the defendant's business on August 15, 1981. At the time of the burglary, defendant was insured against the loss of inventory and cash and against business interruption expenses caused by the burglary. Upon learning of the burglary, defendant

devised a scheme to inflate the amount of his losses and defraud his insurance companies. Defendant overstated his losses due to the burglary and created false documents to support his claim. Specifically, defendant submitted a claim on behalf of his business for $1,071,646 for loss merchandise and cash. Not until after the insurance company scrutinized the claim did the defendant reduce the amount of the claim.

While the insurance companies were investigating the defendant's insurance claim, defendant created false documents which purported to substantiate his loss. Defendant created false bills of lading and other documents to show that merchandise had been delivered to defendant's business which actually never existed. In addition, the defendant convinced an employee to lie at a deposition in further support of the claim.

## B. *Evidence Relating to Defendant's Complaints Against Chicago Police Officers*

Before trial, defense counsel informed the Court that the defense intended to cross-examine Chicago police officers, testifying in the government's case-in-chief, regarding details of a Chicago Police Department Internal Affairs Division ("IAD") investigation. The IAD has investigated complaints filed against the officers by the defendant. Tr. 8-9. Although the government offered to stipulate that the charges of impropriety were made by the defendant, the defense objected to any such stipulation, and the Court indicated that it would permit the defense to introduce, during cross-examination, testimony relating to the IAD investigation. Tr. 10.

On the first day of trial, the government sought clarification of the Court's prior order allowing the defense to inquire into the IAD investigation. At that time, the Court informed both sides that cross-examination into the substance of the IAD complaint would be excluded. Tr. 50. Although the Court offered to permit cross-examination to establish potential bias on the part of the witness, the Court reasoned

that introducing the substance of defendant's charges against the police officers would constitute inadmissible hearsay. Ultimately, the Court concluded that rulings on specific questions should be deferred until the witnesses testified. Tr. 51.

While Officer Lohan testified in the government's case-in-chief, defense counsel attempted to introduce the substance of the complaint filed against Lohan for the purpose of showing bias. Although the Court excluded the substance of the complaint as hearsay, defense counsel was permitted to question Lohan on the fact that a serious complaint had been filed against Officers Lohan, Mulligan and Davis by the defendant with the IAD; that Lohan was investigated by the IAD; and that Lohan was ultimately exonerated of the charges. Tr. 170–71. During Officer Davis' direct testimony, Davis revealed that the defendant had filed a complaint against him with the IAD; that Davis was investigated by the IAD; and that the IAD concluded that the complaint was unfounded. Tr. 206. Defense counsel was allowed to inquire further into the matter on recross-examination. Tr. 248–49. After Officers Lohan and Davis testified, defense counsel made an offer of proof as to the nature of the testimony defense counsel sought to elicit from the officers. Tr. 254. Specifically, the defense desired to reveal to the jury that the nature of the complaint filed by the defendant was that the officers were demanding payoffs from the defendant.

In support of his argument that the Court's order excluding the substance of the IAD complaints constitutes a "substantial question" under 18 U.S.C. § 3143, defendant cites *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) and *United States v. Hitchmon*, 609 F.2d 1098 (5th Cir.1979). In *Davis*, the Supreme Court held that a defendant's constitutional rights were violated when the trial judge refused to allow defendant's counsel to reveal to the jury that a government witness had been placed on probation as a result of a juvenile delinquency adjudication. The Court held that the state's interest in protecting the anonymity of juvenile offenders

did not outweigh the defendant's right to expose a witness' prior conviction and vulnerable status as a probationer as a possible motive for overzealous cooperation with law enforcement officials. Unlike the defendant in Davis, however, the defendant in this case was able to expose any possible bias on the part of Officers Lohan and Davis. The jury was aware that the defendant had filed a "serious complaint" against the officers during the time of their investigation of the defendant. Accordingly, defense counsel argued during closing arguments that:

> The point is there is a burglary and there is a loss.
>
> * * * * * *
>
> No question a coverup by the Chicago Police Department for their own wrongdoing. Mr. Draiman made the fatal mistake, and that is to report the police to the IAD for something they had done.
>
> * * * * * *
>
> But he [the defendant] complained about the police, and so what do they do? They have got to cover their tracks. So they make up this story on August 15....

In light of defendant's closing argument and cross-examination of the officers, defendant was allowed to present to the jury facts which exposed any possible bias on the part of Officers Lohan and Davis.

Similarly, the remaining cases cited by defendant are distinguishable. In *United States v. Hitchmon*, 609 F.2d 1098 (5th Cir.1979), a conviction was reversed because the trial judge prevented the defense from "asking any question that might disclose that [an internal] DEA investigation had been conducted." *Id.* at 1100. In this case, the Court allowed defense counsel to reveal that the IAD investigation had been conducted and that the defendant had initiated the investigation. In *Austin v. United States*, 418 F.2d 456 (D.C.Cir.1969), the appellate court held that the trial judge properly excluded a defendant's testimony, offered to establish a police officer's bias that he had accused the police officer of

bribery. In *United States v. Carreon*, 572 F.2d 683 (9th Cir.1978), the appellate court reversed a conviction where the trial judge repeatedly interrupted defense counsel's arguments, made *sua sponte* objections to the introduction of defendant's evidence and, *sua sponte*, limited the scope of defense counsel's cross-examination of government witnesses. Reviewing the trial judge's conduct, the appellate court held that "the trial judge overstepped the bounds of judicial propriety by excessively interjecting himself into the proceeding below." *Id.* at 686. The exclusion of evidence in this case comes nowhere close to the trial judge's conduct in *Carreon* which deprived that defendant of a fair trial.

Generally, a trial court has broad discretion to control and limit cross-examination. *Davis, supra,* 415 U.S. at 316, 94 S.Ct. at 1110; *United States v. Rodgers,* 755 F.2d 533, 548 (7th Cir.1985). Restricting the scope of cross-examination is error only if the jury is not afforded "sufficient information to make a discriminating appraisal of the witness' motives and bias." *Rodgers, supra,* 755 F.2d at 548. In this case, the jury knew that the defendant initiated a serious complaint against Officers Lohan and Davis; that the officers were investigated by the IAD as a result; and that the defendant's complaint was made while the officers were gathering evidence against the defendant. Since the jury had sufficient information to appraise the witness' motives and bias, the exclusion of defendant's proffered evidence fails to raise a "substantial question" under § 3143.

### C. *Sufficiency of the Evidence*

Defendant next argues that the evidence was insufficient to establish that the defendant caused the mailings charged in the indictment; that the mailings in Counts 4 and 5 were repetitious of the mailing in Count 3; and that the letters for attendance at depositions did not further the scheme.

█ Generally, a mailing is considered "in furtherance of a scheme" if the defendant "commit[s] an act with knowledge that the use of the mails will follow in the ordinary course of business, or commit[s] an act when the use of the mails can reasonably be foreseen." *United States v. Gorny,* 732 F.2d 597, 601 (7th Cir.1984). Mailings made after the scheme has reached fruition, however, are not in furtherance of the scheme. *United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974). On the other hand, "mailings made to promote the scheme, or which relate to the acceptance of the proceeds of the scheme, or which facilitate concealment of the scheme have been found to have been in furtherance of the scheme...." *United States v. Wormick,* 709 F.2d 454 (7th Cir.1983) (citations omitted).

█ In this case, defendant caused a false insurance claim to be filed. It is immaterial that an employee of the defendant actually signed the claim and that the claim was submitted by a public adjuster. It was reasonably foreseeable to the defendant that the claim would be scrutinized by the insurance companies, accountants and lawyers investigating the claim. All of the mailings were reasonably foreseeable and all occurred before the defendant's scheme reached fruition since the defendant never received money from the insurance companies. *Cf. United States v. Maze,* 414 U.S. 395, 402, 94 S.Ct. 645, 649, 38 L.Ed.2d 603 (1974) and *United States v. Wormick,* 709 F.2d 454, 462–63 (7th Cir. 1983) (mailings after the scheme has reached fruition cannot support a mail fraud conviction). Furthermore, defendant has provided no support for his novel argument that copies of defendant's Proof of Loss, mailed to persons investigating the claim, fail to support separate mail fraud charges.

█ The deposition notices were mailed in furtherance of the scheme because the defendant, on several occasions, postponed the depositions for the purpose of creating false documents and arranging perjury. Accordingly, the depositions themselves became part of the scheme to defraud the insurance companies. The false documents

and perjury presented at these depositions were "a step toward receipt of the fruits of the scheme...." The letters scheduling these depositions (Government Exhibits 33 and 34) were not only in furtherance of the scheme, but were necessary to schedule the depositions which became part of the defendant's scheme to defraud the insurance companies.

■ The only letters which the defendant has arguably raised a "substantial question" are Government Exhibits 36 and 37 which gave rise to Counts 9 and 10 of the indictment. These letters were from the insurance companies' lawyer to the defendant's lawyer requesting clarification of an apparently unsatisfactory explanation of the defendant's losses. Although a plausible argument exists that the purpose of these mailings conflicted with, rather than promoted, the defendant's scheme (*see United States v. Staszcuk*, 502 F.2d 875, 880 (7th Cir.1974)), even if the Court were to assume that a "substantial question" exists on Counts 9 and 10, bail pending appeal would not be justified. Defendant has failed to sustain his burden of showing that an appellate court ruling favorable to the defense on Counts 9 and 10 would be likely to result in reversal of the conviction or "an order for a new trial of all counts on which imprisonment has been opposed." *United States v. Hall*, 603 F.Supp. 333, 335 (N.D.Ill.1985). Sentence was imposed on Count 1 only and reversal on other counts would, at best for the defendant, cause the appellate court to remand for resentencing. *See United States v. Wormick*, 709 F.2d 454, 463 (7th Cir.1983).

### D. *Government's Exhibit 47*

■ The third issue raised by defendant relates to the introduction into evidence of Government Exhibit 47. The document to which the defendant objects, however, was prepared by the defendant's own accountant at the defendant's request and was delivered to the accountant for the insurance companies as part of the documentation in support of the defendant's claim. The accountant who prepared the doc-ument was hired by the defendant and prepared the document as part of the routine accounting for the loss. Since the document was prepared in the regular course of business and was a statement of an agent of the defendant, the document was properly admitted as a business record and admission by a party in exception to the hearsay rule. Fed.R.Evid. 801(d)(2); 803(6).

■ Although the government apparently violated Fed.R.Crim.P. 16(a)(1)(C) by not disclosing Government Exhibit 47 before trial, the government's inadvertent error does not warrant a new trial or reversal of the conviction. There is no allegation of prosecutorial bad faith, and the document was not exculpatory under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Given that the document was prepared by the defendant's accountant at the defendant's direction, it is unlikely that the defendant was prejudiced by any unfair surprise. In any event, defense counsel did not request additional time to study the document and therefore cannot claim prejudicial surprise at this juncture. *See United States v. Eddy*, 549 F.2d 108, 113 (9th Cir.1976).

### E. *Evidence of Other Crimes*

Finally, defendant argues that the Court committed reversible error by allowing the government to introduce evidence of other offenses not charged in the indictment for the purpose of rehabilitating a government witness, Sol Messinger. Before trial, the Court denied the government's request to introduce evidence in its case-in-chief relating to the defendant's inventory of stolen and pirated video tapes. Tr. 55. The Court rejected the government's arguments that defendant's involvement in the manufacture and sale of pirated tapes was admissible under Fed.R.Evid. 404(b) to show the defendant's motive or intent.

Sol Messinger, a former employee of the defendant, testified for the government at trial. On direct examination, Messinger stated that in about October of 1981, the defendant had enlisted Messinger's aid in

creating false invoices to support the defendant's insurance claim. Messinger testified that he immediately contacted Agent Bob Williams of the FBI. After informing Agent Williams, Messinger met with the defendant, gave defendant the business stationery he requested, and observed the defendant change the letterhead on the stationery for the purpose of creating a false invoice. Messinger testified that he was cooperating with the FBI's investigation because he knew the defendant was engaging in a fraud. Later, in February of 1982, Messinger testified that the defendant approached him and asked him to sign a false document in support of the defendant's insurance claim. Messinger again informed Agent Williams of the defendant's request. In May of 1982, Messinger was asked by the FBI if he would wear a body recorder during his conversations with the defendant. Messinger agreed, and on June 4, 1982, Messinger secretly tape recorded a conversation with the defendant.

During cross-examination, defense counsel inquired extensively into Messinger's motivation for cooperating with the FBI's investigation of the defendant. Additionally, defense counsel pointed out that Messinger was either confused or not truthful as to when his cooperation with the government began. For example, defense counsel questioned Messinger on the discrepancy between his testimony that he first contacted the FBI in June of 1981 and the fact that the defendant's burglary did not occur until August of 1981. Tr. 566–67. Messinger responded: "Yes, but I was contacting some other activities that Draiman had." Tr. 567. Defense counsel then accused Messinger of lying under oath. "You say now it [Messinger's first contact with the FBI] was June of 1981. But you know that's a lie because the burglary didn't happen until August of 1981." Tr. 567. In addition to accusing Messinger of lying about the date of his first contact with the FBI, defense counsel attacked Messinger's motives for cooperating with the FBI. After Messinger admitted that the defendant gave him free housing and money for living expenses, defense counsel

asked Messinger why he would "trap [the defendant] into saying something that is going to be used against him?" Tr. 590. Defense counsel then continued: "Do you feel any pangs of conscience about that?" Tr. 591. "Do you feel anything wrong in what you were doing to this man who had helped you all these years?" Tr. 591. "So on the one hand, you are working and putting his money in your pocket and supporting your family, and on the other hand, you are putting the knife into his back. Right?" Tr. 592. "So you were spying on this person who had helped you." Tr. 592.

Throughout cross-examination, defense counsel raised serious questions regarding Messinger's motivation for cooperating with the FBI's investigation of the defendant. Additionally, Messinger was unable to explain why he had contacted the FBI before defendant's store was burglarized. Faced with leaving a distorted impression of Messinger's credibility in the minds of the jurors, the Court allowed Messinger to explain his relationship with the FBI during redirect. Specifically, Messinger testified that the reason he first contacted the FBI was because he believed that the defendant was illegally copying video tapes. Messinger explained that he first contacted the FBI because he was concerned that he was being asked by the defendant to participate in various illegal activities. Messinger explained that his contact with the FBI before the burglary related to the defendant's involvement in pirated tapes and not the defendant's insurance claim. After Messinger's explanation on recross, defense counsel was permitted to recross-examine Messinger the next morning.

Generally, when the testimony of a government witness is impeached on cross-examination by defense counsel, the government is entitled to rehabilitate the witness on redirect. *See United States v. Press,* 336 F.2d 1003, 1013 (2nd Cir.1964). If the defense cross-examines the witness on a part of a transaction, the government is entitled to "elicit evidence on redirect examination of the whole transaction...." *United States v. Barrentine,* 591 F.2d

1069, 1081 (5th Cir.1979). The government may rehabilitate the witness, "even if in doing so the evidence offered made the defendant appear as an unsavory character." *Beck v. United States,* 317 F.2d 865, 870 (5th Cir.1963). In fact, even death threats made by a defendant may be elicited during redirect when such testimony is necessary to correct a distorted impression of a witness' credibility. *United States v. Lehr,* 562 F.Supp. 366, 374 (E.D.Pa.1983).

 Before trial, the Court ruled that the probative value of the evidence concerning defendant's involvement with pirated tapes was slight when offered to prove defendant's motive or intent to commit the crimes charged in the indictment. After defense counsel's cross-examination of Messinger, however, the evidence became crucial for the government to rehabilitate Messinger. After cross-examination, the jury was left with the impression that Messinger had lied in a deposition concerning the point in time he first contacted the FBI. Messinger, however, was instructed by the government (following the Court's prior order) not to reveal the fact that his first contact with the FBI concerned pirated tapes and not the defendant's insurance claim. Given the fact that defense counsel vigorously stressed Messinger's "perjury," it was necessary for the jury to understand the apparent discrepancy. The introduction of the pirated and stolen tape testimony, necessary to rebut defense counsel's attack on Messinger's veracity and motives, outweighed the prejudicial effect on the defense. In addition, the prejudicial effect was substantially lessened when defense counsel was allowed to re-cross-examine Messinger the following day. Accordingly, admission of the testimony was not error and, alternatively, if error occurred, the defendant has failed to establish sufficient prejudice that would likely result in a reversal of the conviction on appeal. *See United States v. Barrentine,* 591 F.2d 1069, 1082 (5th Cir.1979).

## CONCLUSION

For the reasons stated above, defendant has failed to sustain his burden under 18

U.S.C. § 3143(b). Accordingly, defendant's motion for bail pending appeal is denied and the defendant is ordered to surrender to the custody of the United States Marshal on or before August 27, 1985 at 12:00 noon.

IT IS SO ORDERED.