UNITED STATES of America, Appellee,

v.

Eddie Joe DAVIS, Appellant.

UNITED STATES of America, Appellee,

v.

Mary Tiek DAVIS, Appellant.

Nos. 80–1867, 80–1901.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 13, 1981.

Decided May 5, 1981.

Rehearing and Rehearing En Banc
Denied May 8, 1981.

Stuart Cofman (argued), Cofman, Townsley, Nissenholtz & Weinstein, St. Louis, Mo., for appellant Eddie Joe Davis.

Robert D. Kingsland, U. S. Atty., Charles A. Shaw, Asst. U. S. Atty. (argued), St. Louis, Mo., for appellee.

C. David Keith, St. Louis, Mo., for appellant Mary Tiek Davis.

Before BRIGHT, STEPHENSON and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Appellants Eddie Joe Davis and Mary Tiek Davis appeal from final judgments of the district court[1] finding them guilty of knowingly and intentionally distributing methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). Each appellant was sentenced to a term of thirty months imprisonment to be followed by a three-year special parole term.[2] The cases have been consolidated on appeal.

For reversal appellants argue that the district court erred in (1) refusing to suppress drugs purchased by undercover agents, (2) refusing to suppress an inculpatory statement made on the telephone, (3) failing to dismiss appellants' indictment on the grounds that the government's conduct violated appellants' constitutional rights, and (4) not ordering a new trial because the government violated Fed.R.Crim.P. 16 by failing to produce a recorded statement made by Mr. Davis prior to using information contained in that statement at trial. For the reasons discussed below, we affirm the judgments of the district court.

On September 12, 1979, Agent Robert M. Zambo of the Drug Enforcement Administration (DEA) was telephoned by an informant, Thea Preston, an acquaintance of appellant Mary Tiek Davis. The informant advised the agent that she had had a telephone conversation with Ms. Davis about purchasing a quarter ounce of methamphetamine. The informant asked the agent whether he would be interested in purchasing this amount of drugs from appellants and Agent Zambo agreed to do so.

On September 13, 1979, Zambo and Agent Hubert Simpson went to Ms. Preston's residence. Ms. Preston then telephoned Ms. Davis and advised her that she was going to visit appellants at their residence for the purpose of purchasing the methamphetamine. Ms. Preston asked Ms. Davis if she could bring someone along and Ms. Davis consented. The agents, dressed in plain clothes and using their undercover identities, accompanied Ms. Preston to appellants' residence.

Ms. Preston and the agents were met at the door by Ms. Davis who invited them inside. Ms. Preston introduced the agents to appellants; thereafter, Ms. Preston and Ms. Davis stepped aside and conversed with one another while the agents negotiated the drug transaction with Mr. Davis, her husband. Before leaving, a quantity of methamphetamine was purchased by the undercover agents.

A few days after the visit, Ms. Preston gave her consent to allow the DEA agents to record a telephone conversation between Ms. Davis and Ms. Preston. Ms. Preston initiated various topics of conversation relating to the prior visit and drug transaction in order to elicit incriminating information from Ms. Davis regarding her participation in the prior sale. The recording of the telephone conversation was admitted into evidence over objection by Ms. Davis' counsel.

On May 30, 1980, both appellants were arrested and attorneys were appointed. Agent Zambo attempted to gain both appellants' cooperation in disclosing the identity of their supplier of the methamphetamine without securing the prior approval of their attorneys. Later that day, pursuant to ad-

---

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

2. Mary Tiek and Eddie Joe Davis were not married but lived together at the time of the arrest; they were married before commencement of the trial.

   The district court adjudged that the imprisonment of Mary Tiek Davis be on the condition that she be confined in a jail-type or treatment institution for a period of six months, the execution of the remainder of the sentence of imprisonment be suspended and Ms. Davis be placed on probation for a period of five years to commence upon her release from confinement. Both appellants were released on bond pending appeal.

vice received from his attorney, Mr. Davis refused to cooperate with Zambo. Zambo thereupon became abusive and threatened appellants with confiscation of property if they refused to cooperate.

On the day Mr. Davis was to be cross-examined, Assistant United States Attorney Charles Shaw received a tape recording of a conversation between Mr. Davis and "Gary Pruett," the alias used by Agent Simpson, that contained incriminating evidence regarding the interstate drug dealings of appellant. On cross-examination, Mr. Davis was questioned about the conversations contained in the recording. Counsel for Mr. Davis had filed a pretrial discovery request pursuant to Fed.R.Crim.P. 16, but was not supplied with a recording or transcript of that conversation until Mr. Davis had completed his testimony.

On September 4, 1980, following a jury trial, appellants were found guilty of distributing methamphetamine.[3] This appeal followed.

These cases have been consolidated on appeal; however, with one exception, appellants present separate questions for our review. We will first address the two claims unique to Ms. Davis. Then we will turn our attention to the mutual claim concerning the indictment, and our analysis will conclude with Mr. Davis' Rule 16 assertion.

## I. Purchase of Drugs—Fourth Amendment

Ms. Davis asserts that the undercover officers were in her residence without her knowledge and consent to engage in a drug transaction and that this conduct violated her fourth amendment rights.

■ A purchase of drugs by a law enforcement officer acting as an undercover agent is not a search or seizure under the fourth amendment. *Lewis v. United States*, 385 U.S. 206, 210, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966). When outsiders are invited into a home for the purpose of transacting unlawful business, a law enforcement officer, acting as a private citizen, may accept an invitation to do business and may enter the premises for the very purpose contemplated by the occupant without infringing upon the occupant's fourth amendment rights.[4] *Id.* at 211, 87 S.Ct. at 427.

■ Prior to trial, Ms. Davis had asserted that there were no unlawful drugs at her residence but was aware of the purpose of Ms. Preston's and the agents' visit. Later she testified that she and her co-appellant, Mr. Davis, spoke with Ms. Preston and one or both of them "set up" the drug transaction.

The record establishes that Ms. Davis conversed with the informant, Ms. Preston, and discussed with her the sale of methamphetamine. At trial Ms. Davis conceded that she personally admitted the agents into her residence but asserts that she did not become aware of the drug transaction until after their departure.

The crucial element in deciding issues like the one presented here is not whether the agents' identities were known, but rather whether the illegal activity that took place on the premises was known by the party extending the invitation to enter. The conclusion supported by the record is that appellant knew of the purpose of the agents' visit, i. e. to purchase the drugs, and consented to their presence in her residence for that purpose. *See United States v. Baldwin*, 621 F.2d 251, 253 (6th Cir. 1980).

■ Thus, the drugs obtained at appellants' home came into possession of the undercover agents through a valid purchase

---

**3.** *United States v. Mary Tiek and Eddie Joe Davis*, No. 80–103–CR (3) (E.D.Mo.Sept. 12, 1980) (order of judgment and commitment).

**4.** During the visit to appellants' home, the agents did not see, hear or seize anything that was not contemplated, and in fact intended, by appellants as a necessary part of their illegal business.

from appellants.[5] Such a purchase does not violate the fourth amendment as a matter of law. *See Lewis v. United States, supra,* 385 U.S. at 212, 87 S.Ct. at 428.

## II. *Recorded Conversation*

Ms. Davis argues that the district court violated her fifth amendment right against self-incrimination by refusing to suppress the recorded conversation between herself and Ms. Preston. We disagree.

■ A necessary element of compulsory self-incrimination is some kind of compulsion. *Hoffa v. United States,* 385 U.S. 293, 304, 87 S.Ct. 408, 414, 17 L.Ed.2d 374 (1966). No evidence of compulsion exists in this case. Ms. Davis disclosed the incriminating information voluntarily. *See Andresen v. Maryland,* 427 U.S. 463, 470–75, 96 S.Ct. 2737, 2743, 49 L.Ed.2d 627 (1975).

■ In the present case no valid claim has been made that Ms. Davis' incriminating statements were the product of any sort of coercion, legal or factual. Where a defendant's conversations with an informant are voluntary and the informant's presence was wholly voluntary, admissions made by the defendant do not violate the fifth amendment privilege against compulsory self-incrimination.[6] *Hoffa v. United States, supra,* 385 U.S. at 303–04, 87 S.Ct. at 414.

Ms. Davis' reliance on *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in her brief is misplaced. No arrest took place prior to or during the telephone conversation. *See United States v. Gocke,* 507 F.2d 820 (8th Cir. 1974), *cert. denied,* 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975). The telephone conversation contained no "inherently compelling pressures which worked to undermine [Ms. Davis'] will to resist and to compel [her] to speak where [she] would not otherwise do so freely . . . ." *Miranda v. Arizona, supra,* 384 U.S. at 467, 86 S.Ct. at 1624.

■ Although probable cause for arrest may have existed, there is no constitutional right to be arrested at the moment probable cause to do so is established. *Andresen v. Maryland, supra,* 427 U.S. at 475, 96 S.Ct. at 2745; *United States v. Craig,* 573 F.2d 455, 474 (7th Cir. 1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978). In sum, the decision to admit the telephone conversation into evidence was not violative of appellant's fifth amendment right against self-incrimination.

## III. *Dismissal of the Indictment*

Next, both appellants assert that the government's conduct before trial constituted an invasion of the relationships between them and their attorneys sufficient to dismiss the indictment against them. We follow the decision of the district court and hold that Agent Zambo's conduct was an intrusion on Mr. Davis' privacy rights but no sixth amendment violation existed because no incriminating information was gleaned from Zambo's contacts with Mr. Davis.

After Mr. Davis was arrested, an attorney was appointed. On May 30, 1980, Zambo entered into conversation with Mr. Davis without previous consent from his attorney. Zambo sought to gain Mr. Davis' cooperation in obtaining information regarding other drug dealers.

---

5. The fourth amendment protects the sanctity of the home, *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1885). However, when as here the home is converted into a commercial center to which outsiders are invited for the purposes of transacting unlawful business, that business is not entitled to the sanctity provided by the fourth amendment. *Lewis v. United States,* 385 U.S. 206, 213, 87 S.Ct. 424, 428, 17 L.Ed.2d 312 (1966) (Brennan, J., concurring).

6. We also note that gathering evidence by overhearing a telephone conversation with the consent of one party does not violate the other party's fourth amendment rights. *United States v. White,* 401 U.S. 745, 752, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971).

Mr. Davis later called Zambo and told him that he would not cooperate because his attorney had advised against it. Appellants contend that subsequent contacts were made by Zambo to solicit Mr. Davis' cooperation, and when appellants continued to refuse to cooperate, Zambo threatened appellants with confiscation of property and a stiff jail sentence.

Mr. Davis asserts that the serious nature of the threats imposed by Zambo, in combination with Zambo's attempt to pursuade him to cooperate with the prosecution of the case without his counsel's consent, violated his sixth amendment rights.

■ Appellants seek dismissal of the indictment, citing the Third Circuit opinion in *United States v. Morrison*, 602 F.2d 529 (3d Cir. 1979), *rev'd*, —— U.S. ——, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). Since argument in this case, the Supreme Court reversed and remanded the decision to the Third Circuit. In *Morrison*, the Supreme Court held that, even assuming that the sixth amendment was violated in the circumstances of this case, nevertheless the dismissal of the indictment was not appropriate, absent a showing of an adverse consequence to the representation received or to the fairness of the proceeding leading to conviction. *Id.* at 668. Cases involving sixth amendment deprivations are subject to the general rule that remedies should be tailored to injuries suffered from the constitutional violation and should not unnecessarily infringe on competing interests.[7] "Absent demonstrable prejudice or substantial threat thereof, dismissal of the indict-

ment is plainly inappropriate even though the violation may have been deliberate." [8] *Morrison, supra,* 101 S.Ct. at 668.

■ While on hindsight we earnestly disapprove of the government agent's conduct, we are compelled to agree with those who previously reviewed this case that the encounter was not sufficient to constitute a sixth amendment violation.

The Eighth Circuit, in *Mastrain v. McManus*, 554 F.2d 813, 821 (8th Cir.), *cert. denied*, 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977), enunciated, as a test for sixth amendment violations of the right to assistance of counsel, that in addition to the intrusion on the attorney-client relationship there must exist a nexus between the intrusion and some benefit to the prosecution. No nexus was shown in the present case. Appellants concede that no evidence helpful to the prosecution was obtained from Agent Zambo's contact with them. *Cf. United States v. Levy*, 557 F.2d 200 (3rd Cir. 1978) (DEA informer sat in on a meeting between the defendant and his counsel disclosing defense strategy to the prosecuting officers). In light of the other evidence legitimately obtained by the government and the cumulative nature of that evidence, the unauthorized communication between the government and appellants did not violate the sixth amendment.

## IV. *Rule 16*

The government failed at its earliest reasonable opportunity to produce a tape of a recording of a telephone conversation held

---

7. *O'Brien v. United States*, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967) (per curiam) (a listening device was planted in the business establishment of an acquaintance of accused after indictment); *Black v. United States*, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966) (accused's hotel room was monitored during grand jury investigation); *but cf. United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (due process may provide a basis for dismissing an indictment if defense can show that prosecutorial delay has prejudiced the right to a fair trial).

8. It is certainly true that where there is gross misconduct on the part of the government no prejudice need be shown. *See O'Brien v. United States, supra,* 386 U.S. at 345, 87 S.Ct. at 1158; *Black v. United States, supra,* 385 U.S. at 29, 87 S.Ct. at 192. However, this case is a far step away from those cases which dealt with "surreptitious invasion" of the type that unmistakably infringes upon the confidential attorney-client relationship. *South Dakota v. Long,* 465 F.2d 65, 71–72 (8th Cir.), *cert. denied,* 409 U.S. 1130, 93 S.Ct. 951, 35 L.Ed.2d 263 (1972).

between Mr. Davis and an undercover agent. This issue, however, was not properly preserved for appeal because counsel for Mr. Davis declined the district court's invitation to make requests or motions regarding the recording.

In the absence of a showing that the points presented affected the substantial rights of appellant so as to constitute plain error, Fed.R.Crim.P. 52, we would be fully justified in refusing to consider Mr. Davis' belated claim. *Peterson v. United States,* 411 F.2d 1074, 1080 (8th Cir.), *cert. denied,* 396 U.S. 920, 90 S.Ct. 247, 24 L.Ed.2d 199 (1969); *McNeeley v. United States,* 353 F.2d 913, 917 (8th Cir. 1965). We have nevertheless examined the merits of Mr. Davis' Rule 16 complaint and find no plain error was committed.

Appellant argues that the government's failure to produce a copy or transcript of the recording prejudiced his substantial right to a fair trial. While we recognize the government's delay in presenting the recording to the appellant appears to compromise judicial integrity, we defer to the judgment of the district court and affirm.

■ Fed.R.Crim.P. 16(a)(1)(C) states:
upon request of a defendant, the government shall permit the defendant to inspect and copy or photograph any relevant written or recorded statements made by the defendant or copies thereof in the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent; and recorded testimony of the defendant before a grand jury which relates to the offense charged.

Discovery matters are committed to the sound discretion of the district court and an error in administering the discovery rules is reversible only on a showing that the error was prejudicial to the substantial rights of the defendant. *United States v. Pelton,* 578 F.2d 701, 707 (8th Cir.), *cert. denied,* 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978).

Assistant United States Attorney Charles Shaw at oral argument conceded that the government erred in not immediately providing Mr. Davis access to the recorded conversation between Mr. Davis and Agent Simpson which contained impeaching evidence. Shaw obtained the tape one day before cross-examination of appellant was to be held. Shaw asserts that immediately upon receiving the recording and before listening to the tape himself, he presented the recording to his secretary so that it could be transcribed. He then went directly to court and cross-examined appellant. After cross-examination, Shaw returned to his office and retrieved a copy of the transcript of the tape and then presented it to counsel for Mr. Davis the next day. Shaw then abandoned his intention to call Agent Simpson to the stand and his intention to introduce the tape for impeachment purposes.

■ We find that, while the government did not comply with the district court's instructions to furnish a copy of all statements made by appellant, no manifest injustice or miscarriage of justice resulted therefrom. The statement which was withheld contained no critical element of the government's case but merely contained information relating to a drug transaction in California in which Mr. Davis allegedly participated.

The government remedied its failure to comply with the inspection order by excluding the recording and its contents from further use at trial. A new trial is warranted where it is "apparent" that the defense strategy would have been altered by the timely disclosure of the statement, *United States v. Padrone,* 406 F.2d 560, 561 (2d Cir. 1969) (per curiam). In this case, however, such a sanction is not called for

because appellant has not established that the failure to disclose the existence and content of the recorded conversation had a prejudicial effect on his case.

Mr. Davis asserts that his case was prejudiced because had he known of the existence of the tape it may have affected his decision to take the stand. We find that assertion to be unsupportable. Appellant's major defense to the alleged charges was entrapment. With an entrapment defense it is a fallacy to suggest that appellant might have refrained from taking the stand and still stood a chance of being acquitted. *See United States v. Johnson*, 525 F.2d 999, 1005 (2d Cir.), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1127, 47 L.Ed.2d 327 (1975).

We disapprove of the government's failure to produce the tape prior to its use during cross-examination. In light of the cumulative nature of the evidence, the time available to the defense for examination and the opportunity defense was provided to request or motion the court relating to the tape, however, we are at this time unable to find that the evidentiary use of the tape prejudiced any substantial right of appellant. *United States v. Barnes*, 634 F.2d 387, 390 (8th Cir. 1980); *United States v. Morton*, 591 F.2d 483, 484 (8th Cir.), *cert. denied*, 441 U.S. 950, 99 S.Ct. 2177, 60 L.Ed.2d 1054 (1979). Thus, no plain error was committed.

In sum, appellants have presented a number of instances in which the government displayed questionable conduct in investigating and prosecuting appellants' cases. Appellants, however, have been unable to establish that the errors committed by the government prejudiced their substantial rights. Therefore, the decision of the district court is hereby affirmed.