UNITED STATES of America, Appellee,

v.

**Roberto Daniel RUIZ–ALTSCHILLER,**
**Appellant.**

UNITED STATES of America, Appellee,

v.

**David Lawrence PERRY, Appellant.**

**Nos. 82–1215, 82–1224.**

United States Court of Appeals,
Eighth Circuit.

Submitted July 15, 1982.

Decided Nov. 2, 1982.

Rehearing and Rehearing En Banc Denied
in No. 82–1215 Nov. 30, 1982.

Rehearing Denied in No. 82–1224
Nov. 30, 1982.

Leonard J. Frankel, Ellyn L. Sternfield, Wolff & Frankel, Clayton, Mo., Ronald E. Jenkins, St. Louis, Mo., for appellant; Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., of counsel.

Thomas E. Dittmeier, U.S. Atty., Edward L. Dowd, Jr., Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges.

HEANEY, Circuit Judge.

David Perry and Roberto Ruiz-Altschiller (hereafter Ruiz) appeal from their convictions for violating 21 U.S.C. § 841(a)(1).

The defendants were charged in a three-count indictment with (1) conspiring to distribute cocaine, (2) distributing approximately one ounce of cocaine, and (3) distributing approximately 13 ounces of cocaine. After the government requested that Count III be dismissed, the jury returned a guilty verdict against each defendant on each of the remaining two counts. The district court[1] sentenced defendant Ruiz to three years imprisonment on Count I, and three years imprisonment on Count II. The terms are to run concurrently, with a special parole term to follow release. The district court committed defendant Perry to the custody of the Attorney General pursuant to the Federal Youth Corrections Act for treatment and supervision for ten years, or until discharged by the Parole Commission. Defendants filed timely notices of appeal. We affirm the district court's judgment.

## I.

### FACTS

On October 14 and 15, 1981, the defendants were staying in a house owned by Jack Dill at 8346 Flora in Vinita Park, Missouri. On October 14, Dill informed Tracy White, a coemployee that Dill's cocaine connections from Florida were at his home. White was a government informant. That evening, White went to Dill's home where he purchased an ounce of cocaine.

The next day, October 15, White called Drug Enforcement Administration (D.E.A.) Special Agent Hubert Coleman, and told him that he knew people from Florida who were selling cocaine in the St. Louis area. After telephoning Jack Dill, White, along with Agent Coleman who was posing as a friend, proceeded to the Flora address. Agent Coleman and White were admitted to the house by Perry. After a short conversation about the procedure for buying the cocaine, Dill and Ruiz arrived. Subsequently, Ruiz weighed one ounce of cocaine onto a scale, and Agent Coleman in his

1. The Honorable H. Kenneth Wangelin, Chief Judge, United States District Court for the    Eastern District of Missouri.

undercover capacity paid Perry $2,100 for the cocaine.

Later in the same day, Agent Coleman called Dill's residence and spoke initially with Ruiz, and then with Perry. Agent Coleman informed Perry that he wanted to buy eleven more ounces of cocaine, and indicated that he would be over later in the day.

After that phone call to the Dill residence, Agent Coleman recruited several D.E.A. agents and went to the house on Flora. Coleman and Agent James McDowell were admitted to the residence. The agents told Perry that they had decided to buy thirteen ounces of cocaine, and showed him the money they had brought with them, which was approximately $20,000. Then both of the agents, still acting in an undercover capacity, went to the second floor of the house with Dill, Ruiz and Perry. When Perry produced a bag which the agents believed to contain cocaine, Agent Coleman identified himself as a D.E.A. agent and indicated that they were all under arrest. Agent Coleman then notified the back-up D.E.A. agents and seized the cocaine along with drug paraphernalia and other objects. He also seized a bag containing nineteen one hundred dollar bills, the serial numbers of which matched those of the money Coleman had previously paid. The D.E.A. agents had not obtained a search warrant prior to entering Dill's house.

## II.

### DISCUSSION

A. *Warrantless Search.*

■ Defendants first contend that their convictions must be reversed because the evidence seized from them and introduced at trial was obtained in a search that was made without a valid warrant, without their consent, and not incident to a lawful arrest. The court below rejected these contentions, and held that no warrant was required. We agree.

Defendants rely principally on two recent Supreme Court decisions. In *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980), the Supreme Court held that absent exigent circumstances, the Fourth Amendment forbids police officers from making a warrantless, nonconsensual entry into a suspect's residence to effectuate an arrest. In *United States v. Johnson,* — U.S. —, 102 S.Ct. 2579, 2595, 73 L.Ed.2d 202 (1982), the Court affirmed the Ninth Circuit's finding that the Constitution was violated by the warrantless arrest of Johnson while he stood within his home after having opened the door in response to law enforcement officers' misidentification of themselves with fictitious names.[2]

Ruiz and Perry argue that the D.E.A. agents here, by acting undercover, misrepresented themselves to defendants, and hence, defendants' invitation to the agents to enter Dill's house was not voluntary. Accordingly, they claim that under *Payton* and *Johnson* they did not voluntarily expose themselves to a warrantless arrest, and thus, their arrest and the seizure of evidence incident thereto was unlawful. We disagree.

Under our recent decisions in *United States v. Collins,* 652 F.2d 735 (1981), *cert. denied,* 455 U.S. 906, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982), and *United States v. Davis,* 646 F.2d 1298 (8th Cir.), *cert. denied,* 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981),[3] the permission to enter given to the D.E.A. agents was voluntarily granted by defendants. Therefore, the arrest and seizure of evidence here was constitutionally valid.

**2.** The principal issue addressed by the Supreme Court in *United States v. Johnson,* — U.S. —, 102 S.Ct. 2579, 2583, 73 L.Ed.2d 202 (1982), was whether *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), should be applied retroactively.

**3.** This Court decided *United States v. Collins,* 652 F.2d 735 (8th Cir. 1981), and *United States v. Davis,* 646 F.2d 1298 (8th Cir. 1981), subsequent to the Ninth Circuit's decision in *United States v. Johnson,* 626 F.2d 753 (9th Cir. 1980), which was affirmed by the Supreme Court at — U.S. —, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).

In both *United States v. Collins, supra,* 652 F.2d at 739–740, and *United States v. Davis, supra,* 646 F.2d at 1301–1302, law enforcement agents acting undercover were invited into the home of the defendants to purchase drugs.[4] In both cases, this Court upheld the warrantless entry even though the officers were acting undercover and entered the defendants' dwellings for the clear purpose of seizing evidence, and in the *Collins* case, making an arrest. Moreover, in both cases, this Court found that the defendants had consented to the entry because they had invited the undercover agents in for the purpose of consummating a drug transaction. In *United States v. Davis, supra,* 646 F.2d at 1301, the Court stated:

> When outsiders are invited into a home for the purpose of transacting unlawful business, a law enforcement officer, acting as a private citizen, may accept an invitation to do business and may enter the premises for the very purpose contemplated by the occupant without infringing upon the occupant's fourth amendment rights. * * *
>
> *   *   *   *   *   *
>
> The crucial element in deciding issues like the one presented here is not whether the agents' identities were known, but rather whether the illegal activity that took place on the premises was known by the party extending the invitation to enter. The conclusion supported by the record is that appellant knew of the purpose of the agents' visit, i.e., to purchase the drugs, and consented to their presence in her residence for that purpose.

*Payton v. New York, supra,* and *United States v. Johnson, supra,* are plainly distinguishable from the circumstances present in *Collins* and *Davis,* and here. *Payton* involved two cases. In one instance, the police forcibly broke down the defendant's door and entered his residence after he did not respond to their knocking. *Payton v. New York, supra,* 445 U.S. at 576, 100 S.Ct. at 1374–75. In the other case, the defendant's three-year old son opened the door after the police knocked, and they then entered the residence without seeking or obtaining the defendant's consent. *Id.* at 578, 100 S.Ct. at 1375–76. In *United States v. Johnson, supra,* 102 S.Ct. at 2582, the defendant opened the door after the police misrepresented their identity and, the defendant then acquiesced to their entry after seeing their drawn badges and guns.

In contrast, here, as in *United States v. Davis, supra,* and *United States v. Collins, supra,* the defendants knowingly and voluntarily invited the undercover law enforcement agents into their residence for the purpose of conducting illegal business. The defendants, by extending such an invitation, voluntarily exposed themselves to a warrantless arrest. The D.E.A. agents then did in fact lawfully arrest defendants. No warrant was required for the search or seizure that followed because they were incident to that lawful arrest.

**B. *Comments by the District Court.***

■ The defendants also claim that the district court erred in denying their motions for mistrial after it informed the jury that defendants' motions to suppress evidence had been decided adversely to them.[5] The district court had stated to the jury:

> Ladies and Gentlemen of the Jury and the Alternate, I will advise you at this time that heretofore a motion to suppress the evidence contained in Exhibits 2— that's the 637 grams—3, 4, 5, 6, 7, 8, 9,

---

**4.** In *United States v. Davis, supra,* 646 F.2d at 1301, the officers were invited in by the defendant herself. In *United States v. Collins, supra,* 652 F.2d at 739, the officers were invited in by the defendant's codefendant who had access to the defendant's home.

**5.** Defendants filed pretrial motions to require the United States to reveal any agreement between the government and a prosecution witness, for a severance, and to suppress the evidence seized at the time of the arrests. United States Magistrate David Noce granted defendants' first motion, and ordered the government to provide defense counsel with any evidence regarding payments to Tracy White. Magistrate Noce recommended that the other defense motions be overruled, and Judge Wangelin adopted this recommendation.

and 10, and I think 11 and 12; in other words, there was a motion to suppress filed. That motion was decided against the defendant. By telling you this, I am not telling you or even suggesting what your findings should be in this case. I merely want to tell you that the question of whether or not what was seized was the result of a warrant or search, and whether or not a warrant should have been applied for beforehand has been decided; and that no warrant was necessary. You may proceed.

We cannot agree that the court below committed reversible error by making these comments.

First, defense counsel did not object to the district court's comments before they were made—even though they had an opportunity to do so. During trial, counsel for defendant Perry was cross-examining Agent Coleman regarding his failure to obtain a search warrant. The district judge interrupted the questioning, called counsel to the bench, and stated that he was going to inform the jury that he had already determined in the pretrial suppression hearing that no search warrant was required. None of the parties objected.[6] Only after the district judge had made his comments did defendants move for a mistrial.

■ Moreover, in a jury trial in federal court, the presiding judge has authority to explain or comment upon the evidence to assist the jury, *as long* as he or she makes it clear to the jurors that they must determine all factual questions. *See e.g., United States v. Spica,* 413 F.2d 129, 133 (8th Cir. 1969).

Here, it is plain that the district court's remarks were intended only to eliminate any confusion concerning whether the D.E.A. agents were required to obtain a search warrant. Furthermore, the district court expressly cautioned the jurors that it was not suggesting that they should make certain factual findings. *See supra* at 1107–1108. Although remarks such as those challenged by defendants are better left unsaid, we believe the district court's cautionary instructions cured any misunderstanding or prejudice.[7] *See United States v. Blanton,* 520 F.2d 907, 913 (6th Cir. 1975); *United States v. Schrenzel,* 462 F.2d 765, 774–775 (8th Cir. 1972).

### C. *Witness Immunity.*

■ Defendants next contend that their convictions must be reversed because the government granted immunity to defense witness Jack Dill without complying with the statutory requirements of 18 U.S.C. § 6003. The United States concedes that it did not fulfill all the requirements of the federal immunity statute when it agreed not to prosecute Dill if he testified. Nonetheless, defendants have not shown that they were in any way prejudiced by the immunity granted Dill or his testimony. Nor could we find any such prejudice in the record. Accordingly, the government's failure here to satisfy the federal immunity statute does not require us to reverse defendants' convictions.

### D. *Alleged Evidence of Other Crimes.*

■ Finally, the defendants urge that because the government dismissed Count

---

**6.** Contrary to defendants' claims, the procedure followed by the district court satisfied Fed.R. Crim.P. 30, which requires that the court give counsel an opportunity to object to the jury charge, or any omission therefrom out of the hearing of the jurors. We cannot agree with defendants that the district judge's actual comments were significantly different from what he indicated they would be. Hence, the district judge accorded defendants an opportunity to object to his statement to the jurors out of their hearing.

**7.** In addition to his cautionary instruction after his remarks to the jury concerning the validity

of the search, the district judge stated to the jury in his opening instruction:

The admission of evidence in Court is governed by rules of law. From time to time it may be the duty of the attorneys to make objections and my duty as Judge to rule on those objections and whether you can consider certain evidence. You must not concern yourself with the objections or the Court's reasons for rulings * * *.

No statement or ruling or remark which I have made or may make during the presentation of testimony is intended to indicate my opinion as to what the facts are. You are to determine the facts.

III, charging Perry and Ruiz with distributing over a pound of cocaine, prior to trial, the district court erred in admitting evidence relating to that count. They contend that the government's evidence should have terminated with the sale of the first ounce of cocaine and that the evidence relating to the other thirteen ounces was inadmissible testimony about another crime for which the defendants were not indicted. They also claim the district court erred in refusing to give their requested instructions concerning evidence relating to such an uncharged offense.

We disagree with these contentions by defendants. Count I charged the defendants with conspiring to distribute cocaine. Defendants' sale of one ounce of cocaine, for which they were indicted in Count II, was one act in furtherance of that conspiracy. Their efforts, which were terminated by their arrest, to sell thirteen more ounces of cocaine to the D.E.A. undercover agents was another such overt act. In proving a conspiracy charge, the government is not limited to establishing the overt acts charged in the indictment. *United States v. Sellers,* 603 F.2d 53, 56 (8th Cir. 1979), *vacated on other grounds,* 447 U.S. 932, 100 S.Ct. 3033, 65 L.Ed.2d 1127 (1980).

Although in some circumstances evidence of crimes committed after the conspiracy has terminated may be inadmissible to prove the existence of the conspiracy, here the court below expressly found that "the conspiracy continued and extended until it was broken up by arrest and seizure." We find no error in this conclusion. To find otherwise, we would have to conclude that defendants brought one and one-half pounds of cocaine from Florida to St. Louis, but they intended to sell only one ounce of it. The evidence is plainly to the contrary.

Therefore, the evidence relating to defendants' distribution of thirteen ounces of cocaine on October 15, 1981, was not evidence of a crime committed after the conspiracy had terminated. Accordingly, since this evidence was relevant to the crime charged in Count I, the district court did not err in admitting it, or in declining to give the jury instructions requested by defendants.

## III.

### *CONCLUSION*

For the foregoing reasons, we affirm the judgment of the district court.