UNITED STATES of America, Appellee,

v.

Terri JANIS, Appellant.

No. 87-5191.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 3, 1987.
Decided Oct. 20, 1987.

John O. Holm, Rapid City, S.D., for appellant.

Lonnie Bryan, Asst. U.S. Atty., Rapid City, S.D., for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Terri Janis appeals from her conviction of distributing and possessing with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). Janis raises numerous issues, but her principal argument is that the government was required to show probable cause before approaching her home to merely ask if she had drugs for sale, and thus all contraband seized by the government should have been suppressed by the district court. We disagree and for the following reasons affirm the decision of the district court.[1]

## I. BACKGROUND

On June 28, 1986, LeRoy Horse, a paid government informant, went to the homes

1. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

of several Pine Ridge Indian Reservation residents and attempted drug purchases. The drug purchases were made by Horse at the direction of F.B.I. Agent James J. Graff. Graff offered to waive prosecution of Horse for possession of marijuana if Horse would assist in the drug purchases.

Horse purchased marijuana from Terri Janis at her home and placed it in his pocket. Horse subsequently made an unrelated purchase of marijuana and placed it in his other pocket. Horse then met with Agent Graff and removed four bags of marijuana from one of his pockets and identified it as that received from Janis. The entire transaction was recorded by Horse who was wearing a body recorder and had been instructed on its use by Agent Graff.

## II. DISCUSSION

### A. Fourth Amendment Claim

█ Janis's principal contention on appeal is that the government lacked probable cause in approaching her home and thus all contraband should have been suppressed by the district court. Janis argues that the Fourth Amendment requires a showing of probable cause before the government may approach the sanctity of one's home. Janis's pre-trial motion to suppress the marijuana was denied because the district court found that Janis had consented to Horse's entry into her home and thus waived her rights under the Fourth Amendment. We agree with the district court that Janis's motion to suppress should have been overruled.

We believe that Janis's reliance on the Fourth Amendment is misplaced. When Janis consented to having the informant in her home for the purpose of selling narcotics no Fourth Amendment rights were implicated. In *Lewis v. United States*, 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966), the Supreme Court stated:

[W]hen * * * the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or

on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant.

*See also United States v. Davis*, 646 F.2d 1298, 1301 (8th Cir.) ("A purchase of drugs by a law enforcement officer acting as an undercover agent is not a search or seizure under the fourth amendment. *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966)"), *cert. denied*, 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981).

In *Davis*, a case very similar to the instant case, this court stated: "The crucial element in deciding issues like the one presented here is not whether the agents' identities were known, but rather whether the illegal activity that took place on the premises was known by the party extending the invitation to enter." *United States v. Davis*, 646 F.2d at 1301; *see also United States v. Ruiz–Altschiller*, 694 F.2d 1104, 1106–07 (8th Cir.1982), *cert. denied sub nom., Perry v. United States*, 462 U.S. 1134, 103 S.Ct. 3117, 77 L.Ed.2d 1371 (1983). The conclusion supported by the record is that Janis knew the purpose of the government informant's visit and agreed to his presence in her home for that purpose.

The test for determining whether a consent is valid is "whether * * * the consent is given voluntarily and without coercion." *United States v. Dennis*, 625 F.2d 782, 793 (8th Cir.1980); *United States v. Briley*, 726 F.2d 1301, 1304 (8th Cir.1984). Janis voluntarily consented to Horse's entry into her home for the purpose of purchasing narcotics.

We hold that the government's conduct in the instant case did not constitute a search as a matter of law. *Davis*, 646 F.2d at 1302. And, therefore the government was not required to obtain a warrant. *United States v. Collins*, 652 F.2d 735, 739 (8th Cir.1981), *cert. denied*, 455 U.S. 906, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982). It follows that if a warrant is not required before government agents purchase drugs

in one's home, then the prerequisite for acquisition of a warrant, probable cause, is not required. Janis's argument that the government must show probable cause before approaching one's home is without merit.

## B. The *Brady* Claim

Janis next argues that the prosecutor failed to provide specifically requested discovery material including: the terms and conditions of the agreement between the government and Horse, a photo lineup, and criminal records of government witnesses. The Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment * * * *"

We note that reversal of Janis's conviction on these grounds requires a showing that the evidence was material. And, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985). We do not believe this standard has been met.

■ We first address the late disclosure of the agreement between the government and Horse, the prosecution's principal witness.[2] It is clear from the record that this evidence was not material to the defense. The record demonstrates that defense counsel was aware of the arrangement between the government and Horse, and in fact the defense investigator questioned Horse about this arrangement almost two months prior to trial. The record also shows that the defense counsel used this information to cross-examine Horse at trial. Janis's defense was not in any way prejudiced by the government's late disclosure of this information.

We do not believe that there exists a reasonable probability that the government's late disclosure of its agreement with Horse affected the result in this proceeding. This is especially true because Horse's testimony was corroborated by the tape recording and it was primarily the tape recording that convicted Janis. *United States v. Risken*, 788 F.2d 1361, 1373 (8th Cir.1986). Therefore, the evidence is not material.

■ Janis also argues that the government's failure to provide copies of a photo lineup shown to Horse in November 1986 requires reversal of her conviction. The record indicates that the government presented defense counsel with copies of the photo lineup on the day of trial. In addition, the photo lineup was discussed with defense counsel prior to trial. Therefore, we do not believe that Janis has been prejudiced by the government's late disclosure of the photo lineup. Further, we do not believe that the photo lineup would have been either exculpatory or impeachment evidence within the *Brady* rule.

■ Janis also argues that the government failed to produce the criminal records of Horse. The government responds by arguing that Horse did not have a criminal record that appeared on the "rap sheet" obtained by the government.

It is not clear from the record whether Horse possessed a criminal record which was not disclosed by the government. However, assuming that such a record exists and was improperly withheld by the government, we do not believe that reversal is warranted. Janis was able to impeach Horse with testimony concerning payments he received from the government and the government's promise to waive prosecution if he assisted them. In light of this impeachment evidence, we do not believe that evidence of additional crimes committed by Horse would have added anything to the defense.

---

**2.** Although we recognize that this issue involves late disclosure of evidence by the government rather than nondisclosure of evidence the result is nevertheless the same. *See United States v.*

*Taylor*, 542 F.2d 1023, 1025 (8th Cir.1976), *cert. denied*, 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977).

After carefully reviewing the record and the briefs submitted by counsel we do not believe that there has been a suppression of *Brady* material which undermines our confidence in the outcome reached in the trial court. *United States v. Bagley,* 105 S.Ct. at 3384.

## C. Contingent Fee Agreement

■ Janis's next contention is that the arrangement between the F.B.I. and Horse was an impermissible fee arrangement.

Janis relies on the Fifth Circuit decision in *United States v. Cervantes–Pacheco,* 793 F.2d 689, 690 (5th Cir.1986), which held that an impermissible contingent fee arrangement violates the Fifth Amendment right to due process.[3]

This court has recently held that an arrangement under which a fee was contingent upon a suspect's conviction would not alone require reversal. *United States v. Risken,* 788 F.2d at 1373.

Nevertheless, it is apparent from the record that the compensation paid to Horse was not contingent upon his performance in any way. Both Horse and Agent Graff testified that Horse's compensation was not based upon his ability to successfully make narcotics purchases. Further, Horse's compensation could not have been contingent upon his testimony because he received payment prior to the indictment of Janis. The testimony of Agent Graff indicates that the $2,000 payment was made to Horse in order to enable him to relocate from the Pine Ridge Indian Reservation.

We note that the primary evil concerning contingent fee arrangements is that "they might tend to cause informers to induce unpredisposed persons to commit crimes." *United States v. Yater,* 756 F.2d 1058, 1067 (5th Cir.), *cert. denied,* 474 U.S. 901, 106 S.Ct. 225, 88 L.Ed.2d 226 (1985). In addition there is a risk of perjury by the informant. *United States v. Cresta,* 825

F.2d at 546–47. These concerns, however, are not present in the instant case. Horse was fitted with a body recorder which taped the entire transaction, this tape was admitted into evidence and corroborated his oral testimony. The concerns over fabricated testimony and improper inducements made by a government informant are thus not present in the instant case. *United States v. King,* 803 F.2d 387, 391 n. 3 (8th Cir.1986) ("When, as here, the informant's evidence was witnessed and recorded, less scrutiny is necessary, since the evidence obtained does not rest on the informant's evidence alone."). As noted in *King,* 803 F.2d at 391, "[i]t is not the contingent fee per se which offends due process, it is the government's preselection of targets for implication by an informant."

In the instant case Janis was not pretargeted by the government. The record reflects that Horse and the Pine Ridge Tribal Authorities supplied the information implicating Janis.

The agreement the government had with its informant was not contingent on the informant's performance, nor was Janis pretargeted by the government.

## D. Voice Analysis Expert

■ Janis argues in her fourth assignment of error that the trial court committed reversible error in failing to provide access to a voice analysis expert. We disagree.

The district court is authorized to provide a defendant with "investigative, expert, or other services necessary for an adequate defense * * * *" 18 U.S.C. § 3006A(e) (1982). The decision whether to authorize such an expert is committed to the sound discretion of the district court. *United States v. St. Pierre,* 812 F.2d 417, 420 (8th Cir.1987). "The defendant has the burden of satisfying the court that expert services are necessary to present an adequate de-

---

3. We note that the Fifth Circuit has recently reconsidered *en banc Cervantes–Pacheco* and has held that contingent fee arrangements with government informants are not per se unconstitutional, *United States v. Cervantes–Pacheco,* 826 F.2d 310 (5th Cir.1987), thus overruling *Wil-*

*liamson v. United States,* 311 F.2d 441 (5th Cir. 1962). *See also United States v. Cresta,* 825 F.2d 538, 547 n. 6 (1st Cir.1987) (First Circuit declined to follow *Cervantes–Pacheco,* 800 F.2d 452 (5th Cir.1986) (Panel decision)).

fense." *United States v. One Feather*, 702 F.2d 736, 738 (8th Cir.1983). Janis sought the services of an expert to prepare an analysis of the conversation recorded by Horse. Janis's defense was that she was not present at the drug purchase. She argued to the district court that a voice analysis expert would be able to show that the voice recorded by Horse was not her voice and thus establish her alibi defense.

The underlying facts do not suggest the slightest support for Janis's theory of the case. The district court noted that Janis had not even listened to the tape and, without any confirmation, she merely assumed that it was not her voice. The court refused to grant expert services based on sheer speculation. We agree with the district court. We do not believe that Janis has carried her burden and the district court did not abuse its discretion in denying Janis's request for a voice analysis expert.

### E. Mistrial

Janis also argues that the district court committed reversible error in refusing to declare a mistrial. We disagree.

■ Janis made several motions for a mistrial which were denied by the district court. Janis's first motion was presented to the court shortly after the jury was empaneled. Janis argued that she spoke with one of the jurors prior to the trial and a mistrial should have been granted because the juror would attempt to identify Janis's voice with the voice on the tape recording to be introduced by the government. Janis failed to challenge the juror for cause or exercise a peremptory challenge, rather she waited until the jury was selected and then moved for a mistrial. The district court denied Janis's motion for a mistrial.

"The grant or denial of a motion for mistrial is placed in the sound discretion of the district court and may only be reversed on a showing of abuse of discretion." *United States v. Powell*, 771 F.2d 1173, 1175 (8th Cir.1985).

At the hearing on Janis's motion for a mistrial the district court stated: "I don't believe the conversation was such that there was sufficient exposure to permit [the juror] to form a definite opinion as to whether or not, if she hears [Janis's] voice in the future, that she would be able to say it is the same person." Tr. at 68. We agree with the district court and hold that the trial court did not abuse its discretion in denying a mistrial.

Janis also moved the court for a mistrial on the grounds that Agent Graff made statements which identified her as a known drug or narcotics dealer. We have carefully reviewed Agent Graff's statements in the record and find Janis's assertion to be without merit.

■ Janis also asserts that the prosecutor's arguments before the jury were racially derogatory towards Native Americans. "The test for reversible prosecutorial misconduct has two parts: (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir.1985); *see also United States v. Powell*, 771 F.2d at 1175.

The district court in response to Janis's motion for mistrial stated:

Now insofar as the remarks by the Assistant United States Attorney, the court did not view them in the light suggested by [defense] counsel. The court views them in the light of the Assistant United States Attorney simply trying to determine whether or not this panel composed of all white citizens, notwithstanding the fact that there is a predominately Indian community on the reservation, can be fair to both the government and to the defendant. It's appropriate as to whether or not the jury would simply take a hands-off attitude by reason of the fact that they are white and that the defendant comes from a predominately Indian community.

Tr. at 44–45.

We agree with the district court and, therefore, do not believe that Janis has met the first part of the test required to show

prosecutorial misconduct. Janis has not shown the prosecutor's remarks to be improper. The district court did not abuse its discretion in denying Janis's motion for a mistrial.

### F. Evidentiary Rulings

 Janis also raises several evidentiary matters. First, Janis asserts that the government failed to lay a proper foundation to introduce the tape recording of the conversation made by Horse. Second, Janis argues the district court erred in admitting the marijuana into evidence. Janis objected to the admission of the marijuana arguing that the government failed to establish that it was the same marijuana purchased from her. Janis rests her argument on Horse's testimony that he could not remember at trial in which pocket he placed the marijuana he purchased from Janis.

These evidentiary rulings are reviewed for an abuse of discretion only and Janis has the burden of showing that the district court abused its discretion in admitting the tape and the marijuana into evidence. *United States v. Henneberry,* 719 F.2d 941, 948 (8th Cir.1983) (review of evidentiary rulings), *cert. denied sub nom., Youngerman v. United States,* 465 U.S. 1107, 104 S.Ct. 1612, 80 L.Ed.2d 141 (1984); *United States v. Bell,* 651 F.2d 1255, 1259 (8th Cir.1981) (admission of tape recording into evidence); *United States v. Risken,* 788 F.2d at 1369–70 (foundation requirements for tape recording). We do not believe the district court abused its discretion.

Judgment affirmed.