OPINION
{¶ 1} Defendant-appellant, William Heriot, appeals from his conviction and sentence in the Warren County Common Pleas Court for possession of crack cocaine, arguing that the trial court erred in overruling his motions to suppress evidence.
 {¶ 2} In September 2003, Detective Bill Couch of the Warren County Drug Task Force received a phone call from Agent Tom Engle of the Montgomery County Combined Agency for Narcotics Enforcement (CANE), informing him about an individual named Brenda Johnson, who was then incarcerated in the Warren County Jail. Engle told Couch that Johnson had information about appellant involving drug trafficking. As a result of this conversation, Couch decided to set up a "reverse buy" between appellant and an undercover officer. In furtherance of this plan, Couch arranged to have Johnson released from jail. He also enlisted the aid of CANE Detective Diane Taylor. Couch's plan called for Johnson to have appellant come to her apartment, which appellant owned, at 525 Chapman Street in Waynesville, Ohio, on October 20, 2003. Detective Taylor, posing as an ex-convict named "Sharon," was to come to the apartment on that date and sell appellant some crack cocaine.
 {¶ 3} On October 20, 2003, Taylor traveled to Johnson's apartment, wearing a wireless transmitter that was being monitored by Couch and his fellow officers, who followed Taylor to the apartment. When Taylor arrived at the apartment, Johnson and appellant were there. Appellant told Taylor that he wanted only one ounce at a time. Using a scale that appellant had brought, Taylor weighed out one ounce of crack cocaine. She then gave the crack cocaine to appellant, and he paid her $700 for it. After Taylor talked with appellant and Johnson for a few minutes, she left the apartment. About 15 seconds later, approximately ten officers, including Couch, converged on the apartment. Appellant was immediately arrested. The police seized the cocaine that appellant had just purchased from Taylor. The police also arrested Johnson and Taylor to maintain their cover. Appellant was taken down to the police station where he was given his Miranda warnings and then interrogated by Couch about the events that had just transpired.
 {¶ 4} On October 27, 2003, appellant was indicted on one count of possession of crack cocaine, pursuant to R.C. 2925.11-(C)(4)(e), a felony of the first degree in that the amount of the crack cocaine involved equaled or exceeded 25 grams but was less than 100 grams. On February 9, 2004, appellant filed a "Motion to Prohibit Use of Contraband and/or Suppress," seeking the suppression of contraband seized from him, on the basis of the alleged failure by police to strictly comply with the provisions of R.C. 3719.141. On that same day, appellant filed a "Motion to Suppress Evidence," seeking the exclusion of any evidence seized from him or his apartment by police, and any statements made by him to police, on the grounds that the warrantless entry and search of the premises violated his Fourth Amendment rights.
 {¶ 5} After holding a hearing on appellant's motion to suppress evidence on Fourth Amendment grounds, the trial court issued a decision and entry on May 11, 2004, denying appellant's motions "to suppress all evidence seized during the warrantless search of the apartment" and "all statements made [by him] subsequent to his arrest[.]"[1] Initially, the trial court determined that appellant had "a reasonable expectation of privacy" in the apartment and thus had standing to challenge the search of the premises, since he owned the apartment and "came and went [from it] as he pleased, although it was not his primary residence[,]" while Johnson merely lived there, rentfree, with his approval. The trial court then determined that the police "had more than the usual probable cause" to arrest appellant since "[t]here was an absolute certainty that a crime had been committed[.]" The trial court also found that it could be "inferred" that appellant and Johnson had consented to Detective Taylor's entry into the premises; that their consent was not withdrawn by Taylor's walking outside; and that because Taylor had permission to enter, her fellow officers "could enter for her protection and safety." The trial court further found that "exigent circumstances" existed for the warrantless seizure of the contraband, because the drugs that the police had just delivered "could easily be either consumed or flushed down the toilet."
 {¶ 6} On May 13-14, 2004, appellant was tried by jury on the possession charge. The jury convicted appellant of the charge, and the trial court sentenced him to five years in prison.
 {¶ 7} Appellant now appeals, raising two assignments of error.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "The trial court erred in failing to grant defendant's motions to suppress evidence filed on 2/9/04 and 3/10/04.[2]
 {¶ 10} Appellant's principal argument under this assignment of error is that the trial court erred in denying his Motion to Suppress Evidence, wherein he challenged the police's warrantless entry into his apartment. He argues that the police lacked both probable cause and exigent circumstances to justify their warrantless entry and search of the premises. He further argues that while the trial court's inference that he and Johnson invited Detective Taylor into the apartment, thereby rendering her entry consensual, "may be correct," it would be "improper to thereafter infer that the other 10 or 11 officers were also invited or that those other officers also entered with consent." We find appellant's argument unpersuasive.
 {¶ 11} Where a defendant knowingly and voluntarily invites an undercover law enforcement officer into his residence for the purpose of conducting illegal business, the defendant, by extending the invitation, voluntarily exposes himself to a warrantless arrest. United States v.Ruiz-Altschiller (C.A.8, 1982), 694 F.2d 1104, 1107. Furthermore, where a defendant consents to an undercover officer's or informant's entry into his premises, and at that point the undercover officer or informant establishes the existence of probable cause to effectuate an arrest or search, then that officer or informant may, in turn, allow other police officers to enter to make the arrest or search. United States v. Pollard
(C.A.6), 215 F.3d 643, 648-649. This rule is known as the doctrine of "consentonce-removed." Id. at 648. It applies where an undercover officer or informant (1) enters a defendant's premises at the express invitation of someone who has authority to consent to the entrance; (2) at that point, established the existence of probable cause to effectuate an arrest or search; and (3) immediately summons help from other officers to effectuate the arrest and search. Id.
 {¶ 12} Applying these principles to this case, it was apparent from the evidence offered at the suppression hearing that the undercover officer in this case, Detective Taylor, entered the apartment at appellant's and Johnson's express invitation to sell appellant crack cocaine. Once inside, she sold appellant approximately one ounce of crack cocaine, which, at that point, gave her ample probable cause to arrest appellant. Finally, when she made the sale, she left the apartment, thereby signaling to her fellow officers that the sale had been made. Taylor's fellow officers, including Detective Couch, who had been monitoring the transaction over a wireless transmitter, converged on the property, arresting appellant and seizing the crack cocaine he had just purchased. Taylor's actions were permissible because appellant and Johnson consented to her entry, and Couch's and the remaining officers' actions were permissible under the doctrine of consent-onceremoved. See Pollard,215 F.3d at 648-649. Thus, the trial court did not err in overruling appellant's motion to suppress evidence on Fourth Amendment grounds.
 {¶ 13} Appellant also argues that the trial court erred by denying his Motion to Prohibit Use of Contraband and/or Suppress on the basis of the state's alleged failure to strictly comply with the provisions of R.C.3719.141. Specifically, appellant argues that the police violated that statute because the actual officer who received approval from the Warren County Prosecutor to sell the crack cocaine, i.e., Detective Couch, was not the same officer who made the actual sale of the controlled substance, i.e., Detective Taylor. However, it is well-settled that the exclusionary rule ordinarily will not be applied to suppress evidence obtained by police conduct that violates a state statute but not a constitutional right. Kettering v. Hollen (1980), 64 Ohio St.2d 232, 235. Furthermore, R.C. 3719.141 does not confer on a criminal defendant the right to challenge his arrest or the search or seizure of evidence from him or his residence on the basis of the state's failure to strictly comply with its provisions. State v. Manning (July 28, 2000), Lucas App. No. L-99-1344. Therefore, the trial court did not err by refusing to suppress the evidence gathered against appellant on the basis of the police's alleged failure to strictly comply with R.C. 3719.141.
 {¶ 14} Appellant's first assignment of error is overruled.
 {¶ 15} Assignment of Error No. 2:
 {¶ 16} "Appellant was denied a fair trial as a result of the cumulative effects of errors."
 {¶ 17} Appellant argues that he was denied a fair trial as a result of the "cumulative effect" of the alleged errors raised in his first assignment of error, as well as his trial counsel's failure to call to the jury's attention an "important" discrepancy in the testimony of one of the state's key witnesses. Appellant posits that "the single most important witness" against him was Detective Taylor, who, appellant argues, was uncertain about several "important" facts, including the denomination of the bills he used to purchase the crack cocaine. Specifically, he points out that Taylor testified at trial that she was certain that appellant handed her seven $100 bills when he purchased the drugs, while other evidence demonstrated that he actually handed her a mixture of bills of various denominations that added up to $700. Appellant submits that if his defense counsel had brought this discrepancy to the jury's attention, this might have had a significant impact upon Taylor's credibility and thus the jury's view of the state's case against him. We find this argument unpersuasive.
 {¶ 18} Initially, we have already found against appellant on the issues he raised in his first assignment of error. Furthermore, although appellant has characterized his primary argument under this assignment of error as being a claim that he was denied the right to a fair trial because of the "cumulative effects" of errors allegedly committed during the trial court proceedings, it is apparent that he is actually raising an ineffective assistance of counsel claim. To prevail on an ineffective assistance of counsel claim, however, a defendant must show that his counsel's performance fell below an objective standard of reasonableness, and that but for that deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. Strickland v. Washington (1984), 466 U.S. 686, 687-694,104 S.Ct. 2052. A failure to make either showing will doom a defendant's ineffective assistance claim. Id. at 697.
 {¶ 19} In this case, the discrepancies in Taylor's testimony had minimal impact on her credibility, particularly, since most of her testimony was supported by a tape recording of her conversations with appellant that was made during the reverse buy, which was admitted into evidence and played for the jury. Furthermore, the discrepancy in Taylor's testimony had little, if any, impact on the overall credibility of the state's case against appellant, which was overwhelming. Therefore, appellant could not have prevailed on an ineffective assistance of counsel claim even if he had brought one, since his trial counsel's failure to call to the jury's attention any discrepancies in the evidence would not have affected the outcome of these proceedings.
 {¶ 20} Appellant's second assignment of error is overruled.
 {¶ 21} Judgment affirmed.
Walsh and Bressler, JJ., concur.
[1] Although the trial court's May 11, 2004 decision and entry focused entirely on appellant's Motion to Suppress Evidence and did not address the issues raised in appellant's Motion to Prohibit Use of Contraband and/or Suppress, it appears that it was the trial court's intention to overrule both motions with its decision, and we will treat it as having done so.
[2] Actually, appellant's Motion to Prohibit Use of Contraband and/or Suppress and Motion to Suppress Evidence were both filed on February 9, 2004.